471 F.Supp. 119 (1979)
Paul D. CARMI, Plaintiff,
v.
The METROPOLITAN ST. LOUIS SEWER DISTRICT, Lawrence J. Bannes, Richard A. Meyer, Marvin O. Young, R. Emmett Concannon, Henry W. Lee, Jr., Phelim F. O'Toole, Jr., Individually and in their official capacities as members of the Board of Trustees of the Metropolitan St. Louis Sewer District, Peter F. Mattei, and Mary Hayslett, Individually and in their official capacities as agents for the Metropolitan St. Louis Sewer District, Defendants.
No. 76-934C(2).
United States District Court, E. D. Missouri, E. D.
March 21, 1979.
*120 Stuart R. Berkowitz, St. Louis, Mo., for plaintiff.
Donald J. Stohr and Charles A. Newman, St. Louis, Mo., for defendants.

MEMORANDUM
WANGELIN, District Judge.
The above entitled case challenges defendants' failure to hire plaintiff, a handicapped individual. Plaintiff alleges that he was discriminated against by defendants, in violation of 29 U.S.C. § 794 (§ 504 of the Rehabilitation Act of 1973, 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fourteenth Amendment.
This cause having been tried to the Court sitting without a jury, the Court, after fully considering the evidence and the applicable law, hereby makes the following findings of fact and conclusions of law.

Findings of Fact
1. Plaintiff (Carmi) is a citizen of the United States and a resident of the State of Missouri.
2. Defendant Metropolitan St. Louis Sewer District (MSD) is a municipal corporation and political subdivision of the State of Missouri established by virtue of § 30 of Article 6 of the Constitution of Missouri, and by a vote of the voters of the City of St. Louis and St. Louis County held in 1954.
3. Defendants S. Joseph Cento, Milton J. Bischoff, Marvin O. Young, Frederick H. Rodefeld, Henry W. Lee, Jr., and Frank C. Borghi comprise the Board of Trustees of MSD.
4. Defendant Peter F. Mattei is the Executive Director of MSD and as such is responsible for the administration of MSD.
5. Defendant Mary Hayslett is the Personnel Supervisor of MSD and as such is responsible for the implementation of personnel policies at MSD.
6. During the calendar year, 1976, MSD received federal financial assistance from the Environmental Protection Agency in the form of construction grants for the Lemay Treatment Plant, the secondary treatment plant on the Mississippi River and engineering grants in connection therewith.
7. Carmi has a rare, hereditary physical disability known as Progressive Peroneal Atrophy (or Charcot-Marie-Tooth Disease). This is a condition in which there is a muscle and nerve deterioration and atrophy in the muscles of the hands and dorsiflexors of the feet. It has a slow but marked progressive course. As a result of the atrophy in his hands, Carmi has a significant and marked weakness of grip in both hands. He has a slightly uneven gait, he has difficulty in rising from a squatting position, and he is unable to repeatedly lift objects in excess of forty pounds.
8. On April 1, 1976, Carmi applied for employment with MSD indicating a preference for the position of storekeeper.
9. After following the procedures and requirements set forth in the Metropolitan St. Louis Sewer District civil service rules and regulations, MSD found Carmi qualified to fill the position of storekeeper and he thus became the preferred applicant for the job of storekeeper 1 at the Bissell Treatment Plant of MSD, his employment being contingent upon successful completion of a physical examination.
10. Among the work assignments performed by a storekeeper at the Bissell plant are receiving and issuing supplies and tools; repairing tools; operating a forklift in the course of receiving supplies; checking and issuing all material handling equipment; inventorying; maintaining and organizing equipment, supplies, and material storage; and sweeping and cleaning the shop.
*121 In the course of receiving and storing supplies, the storekeeper must be capable of rolling and moving fifty five gallon drums weighing approximately four hundred and fifty pounds by utilizing a drum dolly; operating a forklift truck; lifting heavy and bulky and objects either by himself or with the assistance of an attendant or mechanic. Photographs of the storeroom show that the storekeeper would be required to lift heavy materials above his head and climb ladders. The heavier items in the storeroom weigh from forty eight to one hundred and seventy pounds.
11. MSD consistently requires successful completion of a pre-employment physical examination of all prospective employees as a last step in its hiring process. All such examinations are performed at Sutter Clinics, Inc., a totally independent establishment utilized by MSD on a fee-for-service basis. The practice of MSD is not to employ any applicant found unfit for employment by Sutter. The record is devoid of any evidence tending to show that MSD's reliance upon the medical opinions expressed by the doctors at Sutter Clinics, Inc. with respect to physical qualifications of applicants was unjustified or exercised in bad faith.
12. On May 6, 1976 Carmi was examined at Sutter Clinics, Inc. by Dr. Vernon Balster. It was the opinion of Dr. Balster that Carmi not be hired for the storekeeper position because he was not capable of lifting sixty pounds on a regular basis or safely driving a forklift.
13. While this Court reserves some doubt whether the aforesaid physical examination was an exhaustively adequate measure of plaintiff's ability to perform job related functions, this Court concludes that Carmi failed to demonstrate that he could perform the necessary duties and responsibilities required of a storekeeper at the Bissell plant on a daily and continued basis. There was testimony that plaintiff could lift nineteen pounds; there was conflicting testimony as to whether he could lift between twenty and forty pounds; and this Court finds from all the evidence that plaintiff has not shown that he could lift over forty pounds.
14. MSD, after being informed of the results of the physical examination and the recommendations of Dr. Balster, made the decision not to hire Carmi for the position of storekeeper at the Bissell plant.
15. Carmi's application for employment was kept on file by MSD after May 6, 1976, and he was considered for at least one other position. At one point in the Summer of 1976 he was interviewed for a position of rod chain man. No physical examination was necessary because a more experienced man was hired.
16. Carmi has held various jobs since May 6, 1976 with employers other than MSD. As of June 28, 1978 he was employed at Gusdorf Corp. as a parts clerk.

Conclusions of Law
This Court has jurisdiction over the parties and jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4). At all times pertinent to this lawsuit MSD received federal financial assistance within the meaning of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.
Carmi was a handicapped individual within the meaning of 29 U.S.C. § 706(6). Without deciding the issue this Court assumes the Rehabilitation Act allows a private right of action. In United Handicapped Fed. v. Andre, 558 F.2d 413 (8th Cir. 1977), the Eighth Circuit relying upon Lloyd v. Illinois Reg. Transp. Auth., 548 F.2d 1277 (7th Cir. 1977) held that private citizens may seek injunctive relief under the Rehabilitation Act. A determination of whether damages may be recovered by a private citizen under the Rehabilitation Act is not necessary to the resolution of this lawsuit.
As an essential element of the plaintiff's statutory claim under the Rehabilitation Act he must show that he was "[an] otherwise qualified handicapped individual".[*]
*122 The Court concludes, as a matter of law, that Carmi failed to demonstrate that he had the ability to perform necessary and job related skills. Therefore, his complaint insofar as it relates to the Rehabilitation Act must be dismissed.
"Otherwise qualified" does not mean that a handicapped individual must be hired despite his handicap. The statute prohibits the non-hiring of an handicapped individual when the disability does not prevent that individual from performing the job.
This Court need not make a finding of whether a restructuring of the position of storekeeper of the Bissell plant to the physical limitations of the plaintiff would have imposed an undue hardship on MSD because of the following reasons: (a) any duty on recipients of federal financial assistance to accommodate handicapped persons by tailoring the job to the abilities of the applicant arguably stems from regulations established by the Secretary of Health, Education and Welfare in 1977 and 1978, years subsequent to the date in which MSD failed to hire plaintiff in this case. See 42 Fed.Reg. at 22676, 22680 (1977) and 43 Fed.Reg. at 2134, 2138 (1978). The Rehabilitation Act of 1973, by itself, imposes no such affirmative duty, it merely prohibits discrimination against otherwise qualified handicapped individuals; (b) a court is to apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice where there is statutory direction or legislative history to do the contrary. Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Regulations which require affirmative remedial efforts to give special attention to handicaps cannot be given retroactive effect absent a clear statutory basis that would have put recipients of federal assistance on notice that they would be so required. Manifest injustice could result from regulations such as those in question here, which reflect a vast change in law from the statute they are intended to implement; (c) the legislative and administrative history surrounding the promulgation of the statute and regulations support the conclusion that the regulations are inapplicable here. The discrimination provisions of the Rehabilitation Act were not intended to be self executing. See Cherry v. Matthews, 419 F.Supp. 922, 924 (D.D.C.1976) and legislative history cited therein.
Moreover, none of the regulations implementing the statute apply to MSD. The regulations adopted by HEW on May 4, 1977 apply only to recipients of financial assistance from HEW. The regulations adopted by HEW on January 13, 1978 were intended to serve as models for regulations to be issued by each agency or department of the federal government that provides financial assistance and were not to have retroactive reach. 43 Fed.Reg. 21, 33 (1978). The record discloses no evidence that MSD ever received any federal assistance from any other federal agency other than the environmental protection agency. At this time the EPA has not promulgated any rules regulating the recipients of its assistance.
Plaintiff alleges that the denial of employment to applicants with Progressive Peroneal Atrophy while hiring otherwise qualified applicants is an unjustified and unreasonable classification in violation of the Equal Protection Clause. This Court disagrees. When applicants have Progressive Peroneal Atrophy to the degree that they are not capable of performing all the responsibilities and duties requisite to the job the classification is reasonable and allowable.
MSD maintained plaintiff's job application on file and considered hiring him, and indeed interviewed him, for another job. It is undisputed that Carmi's handicap in no way hindered his selection as the preferred applicant. Therefore, plaintiff's reliance on Cleveland Bd. of Educ. v. LaFleur, 414 U.S. *123 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) is misplaced. There has been no showing that MSD adopted an irrebuttable presumption against hiring either handicaps in general or individuals with Progressive Peroneal Atrophy in particular. Indeed the record is replete with evidence of the positive regard MSD possesses for handicapped individuals employed by MSD.
Plaintiff's complaint, insofar as it rests on the due process clause, must be dismissed. Plaintiff, lacking the qualifications for the job of storekeeper, has no liberty or property interests which he may assert. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).
In a holding as a conclusion of law that defendants did not deprive or conspire to deprive plaintiff of any constitutional rights or deprive plaintiff of any rights, privileges or immunities secured by the Rehabilitation Act, it follows that plaintiff's claims under 42 U.S.C. §§ 1983 and 1985(3) must also fail.
Judgment must be entered for the defendants.
NOTES
[*] 29 U.S.C. § 794 provides: No otherwise qualified handicapped individual in the United States, as defined in § 706(6) of this Title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.