**Charlotte FRANKLIN, Plaintiff,**

v.

**U.S. POSTAL SERVICE, Defendant.**

**Civ. No. C–1–87–189.**

United States District Court,
S.D. Ohio, W.D.

May 27, 1988.

Ivan Tamarkin, Cincinnati, Ohio, for plaintiff.

Carolyn L. Davis, U.S. Postal Service Law Dept., Philadelphia, Pa., Elizabeth Mattingly, Asst. U.S. Atty., Cinti, Ohio, for defendant.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court following trial on May 16, and 17, 1988 at which time testimony and evidence was presented. Plaintiff asserts a cause of action against defendants by alleging discrimination against a handicapped person in violation of 29 U.S.C. § 794. Plaintiff also seeks an appeal from an action by the Equal Employment Opportunity Commission (EEOC) finding no such discrimination. In accordance with Rule 52 of the Federal Rules of Civil Procedure the Court does submit herewith its Findings of Fact, Opinion and Conclusions of Law.

### I.

### FINDINGS OF FACT

1. Plaintiff Charlotte Franklin was employed by the United States Postal Service from September, 1969 to May 19, 1979. During that period she was assigned to a branch post office in St. Bernard, Ohio, a municipal corporation which adjoins Cincinnati, Ohio. Ms. Franklin's work history in that post office was not exemplary, but rather one marked by an unfavorable and belligerent attitude towards her coworkers and also towards the public which she

served. While her record includes disciplinary action of various kinds, she was never at any time disciplined or reprimanded for such attitudes.

2. Ms. Franklin suffers from a mental illness known as paranoid schizophrenia. Both before and after her termination by the Postal Service she had frequent hospitalizations for this illness. At various times she has also been arrested for offenses such as defrauding a livery, passing bad checks, assault and disorderly conduct (Deft. Ex. HH).

3. Between 1975 and 1979 Ms. Franklin had four prolonged hospitalizations for psychiatric reasons. She was confined to Rollman Psychiatric Institute in Cincinnati, Ohio from December 26, 1975 to March 23, 1976 (Deft. Ex. HH 41), from October 22, 1976 to January 21, 1977 in the Central Ohio Psychiatric Hospital (Deft. Ex. W. 1, CC 1, HH 206), from May 5, 1977 to March 15, 1978 at Longview State Hospital, Cincinnati, Ohio (Deft. Ex. HH 41, 178, 179, AA 1) and from December 26, 1978 to January 10, 1979 at the Central Ohio Psychiatric Hospital in Columbus, Ohio. In addition to the foregoing, she was confined to St. Elizabeth's Hospital, Washington, D.C. for eight weeks in 1979. Her episodes of psychosis have continued to the present. On November 8, 1987 she was admitted to the Rollman Psychiatric Institute with acute psychosis. She remained at that institution for four days (Deft. Ex. HH 42).

4. On three separate occasions Plaintiff has demonstrated a threatening and belligerent attitude toward public officials. On January 5, 1976 she appeared at the Offices of then Governor James A. Rhodes of Ohio carrying a concealed weapon and thereafter entered into an altercation with security guards. She was forcibly subdued and sent to the Central Ohio Psychiatric Institution. As a result of this incident Ms. Franklin was discharged by Defendant but later reinstated conditioned that she would take appropriate medication.

On October 18, 1976 she once again attempted to force entry into the office of Governor Rhodes and was once more subdued. She was charged with resisting arrest and criminal trespassing and placed in a psychiatric institution. She was discharged a second time as a result of this activity. The American Postal Workers Union intervened once again and pursuant to a grievance procedure obtained a "last chance agreement" with the Postal Service. By this agreement the Plaintiff was reinstated under the following conditions: "It is understood that the second reinstatement will be the grievant's last opportunity. Any future occurrences of the same or similar nature should be considered just cause for immediate discharge." (Deft. Ex. G)

In February, 1979, Ms. Franklin attempted to force her way into the White House in Washington, D.C. and once again required forcible restraint. She was charged with assaulting a Secret Service officer. As a result of this incident, she was placed in St. Elizabeth's Hospital for psychiatric attention.

In accordance with the "last chance agreement", Ms. Franklin was discharged on May 19, 1979. An appeal was subsequently taken to the EEOC. On January 15, 1987 the EEOC determined that the Plaintiff was not discriminated against by the agency on the basis of her mental handicap when she was terminated from her position (Deft. Ex. F).

5. Plaintiff's condition is reasonably controllable by the use of medication. For various reasons Plaintiff has elected from time to time not to take the prescribed medication and the various violent episodes followed thereafter. The reasons asserted by Plaintiff have varied depending upon time and circumstances. The EEOC found as follows: "According to the record sometime after the settlement agreement was signed appellant discontinued taking her prescribed medication because she had depleted her supply and did not return to the clinic." (Deft. Ex. F 2).

At the hearing of the discrimination complaint (Deft. Ex. A) the following appears on page 14: "While I didn't go to the clinic to get anymore [medicine] because I didn't think there was anything wrong ..." On page 19 the following appears: "Question:

Were you on medication when you came back to work? Answer: I was supposed to have been but I didn't have any and I didn't go to the clinic." In an examination by a clinical psychologist of the Central Psychiatric Clinic the following appears: "Ms. Franklin has a history of chronic mental illness. She has been hospitalized numerous times, often via probate procedures. In the past she has often been resistant to psychiatric medication" (Deft. Ex. HH 12).

A clinical social worker at the Central Psychiatric Clinic on November 6, 1986 made the following observation: "She is treated for a major psychiatric illness and takes medication to control it. Approximately two months ago she had gone without her medication for several weeks and experienced a deterioration in her mental condition ..." (Deft. Ex. HH 3).

It was reported by a clinical psychologist in 1983 as follows: "However, she refuses antipsychotic medication. She states that she has taken this medication in the past and it 'stopped my period, made me need glasses and messed up my body.'" (Deft. Ex. HH 14).

The importance of Ms. Franklin taking medication was pointed out by Dr. Donald G. Beal, clinical psychologist at the Central Psychiatric Clinic in Cincinnati, Ohio. He stated: "As long as Ms. Franklin takes her psychotropic medication she functions effectively in society. On the other hand, when she does not take her medication she tends to decompensate and eventually she suffers a substantial disorder of thought and mood which grossly impair her judgment, behavior, capacity to recognize reality and the ability to meet the ordinary demands of life." (Deft. Ex. HH 30).

6. During her employment by the Postal Service from December, 1975 through May, 1979 Ms. Franklin was absent 464 days in a "leave without pay (lwop)" status. The absences including the following: December 3–5, 1975 (3 days) (Deft. Ex. O), December 19–21, 1975 (3 days) (Deft. Ex. O), December 26, 1975—April 23, 1976 (119 days) (Deft. Ex. N), April 24, 1976—May 20, 1976 (26 days) (Deft. Ex. LL 7), October 18, 1976—January 6, 1977 (81 days) (Deft. Ex. P 1). January 7, 1977—February 11, 1977 (35 days) (Deft. Ex. KK 1), July 28, 1977—September 9, 1977 (44 days) (Deft. Exs. KK 9, 10, 11 and 12), September 10, 1977—September 19, 1977 (10 days) (Deft. Ex. KK 13), December 26, 1978—February 9, 1979 (46 days) (Deft. Ex. KK 73, 74, 75, 76, 78), February 10, 1979—May 19, 1979 (98 days) (Deft. Ex. KK 79, 80, 81, 82, 83, 84, 85, 86).

## II.

### OPINION

Plaintiff's right to recovery is governed by 29 U.S.C. § 794 entitled "Nondiscrimination Under Federal Grants and Programs ..." That section contains the following language: "No *otherwise qualified handicapped individual* in the United States as defined in § 706(7) of this Title shall solely by reason of his handicap be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity ... conducted by ... the United States Postal Service." (Emphasis added)

The question to be determined is first whether or not the Plaintiff is an otherwise qualified handicapped person, and second whether or not reasonable accommodations were made for Plaintiff's handicap.

In order to assert a claim that she was discriminated against because of a mental handicap, plaintiff must satisfy the threshold requirement that she is handicapped person as defined by the statute. *Jasany v. United States Postal Service*, 755 F.2d 1244 (6th Cir.1985). A handicapped person is one who has a physical or mental impairment which substantially limits one or more of such person's major life activities, has a record of such impairment or is regarded as having such an impairment. 29 U.S.C. § 706(7)(B), 29 C.F.R. § 1613.702(a). "Major life activities" is defined in 29 C.F. R. § 1613.702(c) as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and *working.: Jasany, supra* at 1248. (Emphasis added)

An examination of the evidence presented discloses an individual suffering from a severe mental illness—paranoid schizophrenia. (See Finding of Fact 2:) This Court notes that such a condition may place Plaintiff in the handicapped category. However, even as a handicapped person, she must still be qualified to perform the duties for which she was hired by the Post Office. *Jasany, supra* at 1250.

The Rehabilitation Act, 29 U.S.C.A. § 794, was enacted to promote and expand employment opportunities in the public and private sectors for handicapped individuals. Section 504 of the Act, 29 U.S.C.A. § 794 provides in part:

> No *otherwise qualified handicapped individual* in the United States as defined in § 706(7) of this Title, shall solely by reason of his handicap be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity ... conducted by ... the United States Postal Service. (Emphasis added).

A "qualified handicapped person" is one "who with or without reasonable accommodation, can perform the essential functions of the position in question." 29 C.F.R. § 1613.702(f). The seminal case interpreting the term "otherwise qualified handicapped individual" under the Rehabilitation Act is *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap. *Id. See Daubert v. United States Postal Service,* 733 F.2d 1367 (10th Cir.1984). The statute prohibits the nonhiring [or discharge] of a handicapped individual when the disability does not prevent that individual from performing the job. *Carmi v. Metropolitan St. Louis Sewer District,* 471 F.Supp. 119 (E.D.Mo.1979), *aff'd on other grounds,* 620 F.2d 672 (8th Cir.1980), *cert. denied* 449 U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980).

A cause of action exists therefore only if an individual shows that she is *otherwise* qualified for the position sought and that even though she was otherwise qualified, she was rejected [or discharged] for the position solely on the basis of her handicap. *Daubert, supra* at 1371. An examination of the evidence herein discloses an individual suffering from a severe mental illness. On at least three occasions she engaged in antisocial activities that culminated in violence. Her record of attendance in a three and one-half year period included 464 days of unexcused absence.

Plaintiff herself has exacerbated her handicap by refusing to take appropriate medication on a consistent basis. Despite her frequent and contradictory reasons for not taking her medication, the evidence is clear that she can function reasonably well only when under such medication. Aside from the issue that the burden is upon a plaintiff to establish a handicap, the Court is far more concerned with the situation in this case that the "handicap" as distinguished from the "condition" is a created one. It is Plaintiff's election not to take her medication that has caused the incidents of arrest and violence and violations of law. The choice being hers, it seems difficult if not impossible to understand why the actions of the defendant should be deemed to be discriminatory.

 We turn to the inquiry of "reasonable accommodation." If a plaintiff has presented a case of discrimination, the burden then shifts to the defendant employee to demonstrate that reasonable accommodation is not possible. *Jasany v. United States Postal Service,* 755 F.2d 1244, 1250 (6th Cir.1985); See *Prewitt v. United States Postal Service,* 662 F.2d 292, 306–08 (5th Cir.1981). The test is whether a handicapped individual "can perform the essential functions of the position in question without endangering the health and safety of the individual[s] or others." *Prewitt, supra* at 307.

The forbearance of the Postal Service is remarkable to say the least. In two of the incidents that involved violence the Plaintiff was dismissed and later reinstated. The last reinstatement imposed a condition upon Plaintiff that she refrain from such activities in the future and Plaintiff simply failed to meet that condition. It is difficult

to understand what it is that the Postal Service failed to do. How many times must violence be overlooked before a "reasonable accommodation" has been achieved.

If it be asserted by Plaintiff that the absenteeism was not a result of the condition then she is clearly not "otherwise qualified", but simply an individual unwilling to perform the function of her job. If such absenteeism is a direct result of Plaintiff's frequent hospitalization for paranoid schizophrenia, it is equally clear that the condition is controllable by the voluntary act of Plaintiff in taking medication.

The evidence indicates that she has failed or refused to take the prescribed medication and accordingly is subjected to frequent periods when she is belligerent, violent and potentially dangerous. It does not appear to this Court that the Postal Service is required to employ a person who has demonstrated the antisocial behavior of this Plaintiff and subject either fellow employees or the public to Plaintiff's violence.

The act in question essentially prohibits discrimination. The EEOC in a careful investigation has determined that there was none. After reviewing the testimony and exhibits herein the Court is of the opinion that no discrimination occurred and that the decision of the EEOC is amply supported by both the record and by the continuing conduct of Plaintiff following her termination.

### III.

### CONCLUSIONS OF LAW

A. This Court has jurisdiction pursuant to 29 U.S.C. § 791.

 B. A person suffering from the condition of paranoid schizophrenia that is controllable by the ingestion of medication who does not take such medication is not an "otherwise qualified handicapped person."

C. A person with a history of antisocial behavior whose condition of paranoid schizophrenia is not controllable by medication or otherwise is a danger to the public and to coworkers and is not an "otherwise qualified handicapped individual."

D. An employer who twice restores an employee to her job after incidents of violence against public officials has made reasonable accommodations to that employee. A discharge after a third such incident is not a victim of discrimination.

E. An agreement to rehire conditioned that the employee not engage in violent antisocial activity is a reasonable condition and a discharge after a failure by such employee to observe that condition is not an act of discrimination.

F. In view of the foregoing, the Court determines that Plaintiff has not established a cause of action and that her complaint should be and it is hereby DISMISSED at Plaintiff's costs.

It is so ORDERED.