Original
No. 89-561

PETITION OF KENNETH R. DUNLAP, JR.
(New Hampshire State Board of Education)

July 31, 1991

*James F. Allmendinger,* of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the petitioner.

*Kidder & Lawson,* of Laconia (*Bradley F. Kidder* and *Edward E. Lawson* on the brief, and *Mr. Kidder* orally), for the Laconia School Board.

*John P. Arnold,* attorney general (*David S. Peck,* senior assistant attorney general, on the brief and orally), for the State Board of Education, on the issue of transcription costs.

HORTON, J. As the result of numerous absences due to the effects of chronic asthma, Kenneth R. Dunlap, Jr., was informed by the Laconia Superintendent of Schools in February of 1989 that the Laconia School District (the "district") would not renew his contract as a high school Spanish teacher. This decision not to renew was affirmed after a hearing before the Laconia School Board (the "school board"), and after administrative appeal to the State Board of Education's Board of Review (the "State Board"). Pursuant to Supreme Court Rule 10, he filed a petition for writ of certiorari with this court, arguing three points. First, he asserts that the State Board erred in

upholding a discriminatory nonrenewal decision which violated RSA 354-A:8 (1984 and Supp. 1990) and the similar proscriptions of § 504 of the Federal Rehabilitation Act of 1973, *codified at* 29 U.S.C. § 794, as well as 42 U.S.C. § 1983 and the equal protection clauses of the Federal and New Hampshire Constitutions. Second, he contends that the State Board also erred in declining to hear the testimony of an expert medical witness. Finally, he asks this court to find that the procedure employed in seeking review of the nonrenewal decision has not foreclosed his prosecution of a discrimination complaint before the New Hampshire Commission for Human Rights under RSA 354-A:9 (1984 and Supp. 1990).

After we accepted the petition, an additional controversy arose concerning the costs of transcribing the record. We ordered separate briefing and have heard oral argument on the question whether, in a certiorari proceeding challenging the decision of a State agency, the transcription cost is regulated by RSA 541-A:16, VII (Supp. 1990), providing that a requesting party must pay the reasonable cost of transcription, or by RSA 541:11, which specifies the maximum charge to the requesting party.

For the reasons set forth below, we reverse the decision of the State Board and order the petitioner reinstated. We also determine that he may continue to prosecute his complaint before the commission for human rights. As to the issue of transcription costs, we hold that payment of the full, reasonable costs, in the first instance, is the obligation of the petitioner.

The petitioner, who at the time the present dispute arose was in his twenty-third year of teaching in the Laconia School District, suffers from chronic asthma. Principally because of this condition and the asthma-related aggravation of influenza and colds, he was absent from his teaching duties a substantial, and increasing, number of school days. The record cites an average absence record of twenty-two school days per year over the six years preceding his nonrenewal, with this average rising to over thirty-three days per year in the two years immediately preceding nonrenewal. He was the only full-time Spanish teacher in the district, and none of the available substitute teachers in the district were qualified to teach Spanish classes. As a result, little, if any, meaningful Spanish language instruction occurred during his absences. By letter dated February 28, 1989, the superintendent of schools notified him that he would not be renewed in his teaching position for the following year.

Although the petitioner had received medical treatment for his asthma in the past, upon receipt of the superintendent's letter he contacted a specialist in respiratory disorders, one Dr. George A.

Vraney. Dr. Vraney prescribed a new course of treatment which, the doctor asserted in an affidavit, would control the petitioner's lung function sufficiently to prevent the recurrence of the asthma-associated respiratory problems which had plagued him over the past few years. This affidavit from Dr. Vraney stated that the petitioner had a "very treatable form of asthma that should not continue to impair [the petitioner's] ability to function and should not result in significant absenteeism in the future." There was also a consultation with another specialist in respiratory disorders, Dr. Harold Friedman. Dr. Friedman stated in an affidavit that it was "likely that [the petitioner's] symptoms could be significantly improved. . . . I believe that with careful monitoring of his asthma, [the petitioner] could substantially decrease lost time from work in the future."

Pursuant to RSA 189:14-a, the petitioner contested the district's nonrenewal by requesting a "just cause" hearing before the school board, which was held on April 6, 1989. At this hearing, testimony and exhibits demonstrated that the petitioner suffered from asthma and that he was not deficient in his teaching skills. Rather, the cited reason for nonrenewal, and the focus of the hearing, was the deleterious effect of the petitioner's numerous absences. The petitioner's primary defense at this hearing was that his prognosis had vastly improved and that his asthma-related absences would abate. He testified that the previous under-treatment of his asthma was the result of confusion concerning his symptoms: he had come to associate asthma with wheezing and shortness of breath, not with the coughing attacks experienced in recent years and which he mistakenly ascribed to the effects of influenza. The petitioner also entered into evidence the two medical affidavits mentioned above, and he offered that he had suffered no absences whatsoever since the start of the new medical regimen. In support of his discriminatory treatment claims, the petitioner sought to introduce evidence that several school district employees had had extended to them unearned sick leave covering at least as much time as the absences incurred by the petitioner, whereas his own request for such additional leave was rejected by the superintendent.

Testifying for the school district, the school principal stated that the petitioner had told him "on a number of occasions he thought [his symptoms] were getting better much [sic]. He thought he was improving. He thought his health was better. . . . [He] felt that he had this thing licked. . . ." The superintendent of schools offered the following testimony:

"Q: If the prognosis were for improved attendance on the part of Mr. Dunlap, would that change your recommendation?

A: I see no reason why there should be that prognosis given the past history. . . .

Q: If the prognosis were for improvement, would that change your recommendation?

A: I don't think so."

The superintendent also stated that he had no firsthand knowledge of the petitioner's teaching abilities. The testimony of a teacher who had substituted for the petitioner during one of his recent bouts of illness buttressed the school district's contention that the quality of classroom instruction suffered because of the petitioner's frequent absences.

On April 11, 1989, the school board voted to sustain the school superintendent's decision not to renew the petitioner's contract. The school board's decision cited the petitioner's absentee record as adequate justification for the superintendent's nonrenewal decision, stating that "in the case of all other teachers [with excessive absence records] except those suffering from terminal illness or permanent disability, the long range prognosis was that the teacher would eventually return to the classroom and carry on as before. . . . [; in] the petitioner's case, the lesson of his ten-year history is that his absenteeism will not improve." The petitioner then requested a hearing before the review board of the State Board of Education, arguing that the local school board's decision discriminated against him in violation of handicap and equal protection laws. This hearing was held August 8, 1989, with further oral argument heard on August 30, 1989. At the August 8 hearing, the State Board denied the petitioner's request to have Dr. Vraney testify, stating that it did so because Dr. Vraney had not testified at the April 6, 1989 school board hearing and that his previous affidavit was already part of the record received into evidence.

Throughout these proceedings before the State Board, the petitioner continued to focus on his improved prognosis, noting that he did not suffer any further absences during the remainder of the school year since starting the new treatment. On August 30, 1989, the State Board voted to uphold the decision of the school board. In stating its reasons, it said that the petitioner's "record of excessive absences was sufficient for the Laconia School board to conclude he was not able to perform his responsibilities—and had not done so

over a period of several years. (35 days in 1988–89)." Addressing the issue of Dr. Vraney's affidavit, the State Board ruled that "[t]he Laconia School Board . . . was. . . entitled to give whatever weight it deemed appropriate to Mr. Dunlap's prognosis given by Dr. Vraney." A motion for rehearing, arguing that the State Board should have allowed Dr. Vraney to testify in order to refute the lay opinions presented by the principal touching upon the medical prognosis, was denied.

The petitioner then filed a petition for writ of certiorari with this court on December 13, 1989. After our acceptance of the petition, a conflict arose between the office of the attorney general, which argued that RSA 541-A:16, VII governed the allocation of transcription costs, and the petitioner, who argued that RSA 541:11 is the relevant statute. We ordered additional briefing on this issue by both the office of the attorney general, representing the State Board of Education for purposes of this issue only, and the petitioner.

■ ■  As a preliminary matter, this court must determine the standard to apply in reviewing a decision of an administrative agency such as the State Board of Education. Under RSA 189:14-b, the State Board's review of a local school board decision is "final and binding upon both parties." Although this statutorily-mandated finality precludes the regular appeal of a State Board decision, it does not eliminate judicial review. *See, e.g., Petition of Darlene W.*, 124 N.H. 238, 241, 469 A.2d 1307, 1309 (1983); *Petition of Gorham School Board*, 121 N.H. 878, 880, 436 A.2d 74, 76 (1981). This court will grant certiorari and reverse the decision of an agency such as the State Board where it "exceeded its jurisdiction or authority, otherwise acted illegally, abused its discretion or acted arbitrarily, unreasonably, or capriciously." *Petition of Bagley*, 128 N.H. 275, 282, 513 A.2d 331, 336 (1986). The petitioner cites two of these grounds in his challenge to the decision of the State Board. He asserts that the State Board acted illegally in upholding a discriminatory local school board decision. He also contends that the State Board acted arbitrarily in declining to hear the testimony of his medical expert. As we determine that the State Board erred in the first of these respects, we grant the petition and order Kenneth R. Dunlap, Jr., reinstated.

The petitioner's first argument is that his nonrenewal by the Laconia School District discriminated against him in violation of RSA 354-A:8 and 29 U.S.C. § 706(8) (1988) (respectively, the New Hampshire and federal handicap discrimination laws), 42 U.S.C. § 1983 (1988), and the equal protection provisions of the New Hampshire

and Federal Constitutions, and that the State Board thus acted illegally in upholding this decision. Because the present petition can be resolved on statutory grounds, we decline the petitioner's invitation to address the constitutional issues, *see State v. Grondin*, 132 N.H. 194, 197, 563 A.2d 435, 436 (1989), as well as the associated 42 U.S.C. § 1983 complaint. Further, as we determine that the petitioner meets the requirements of RSA chapter 354-A, an act of our legislature specifically designed to protect persons such as the petitioner against discriminatory treatment, we need not address any protection he may enjoy under federal handicap discrimination law. However, the experience of the federal courts in applying federal handicap discrimination law assists us in interpreting the similar proscription against handicap discrimination contained in our own law. *See, e.g., Scarborough v. Arnold*, 117 N.H. 803, 807, 379 A.2d 790, 793 (1977), *aff'd after remand sub. nom., Scarborough v. R.T.P. Enterprises, Inc.*, 120 N.H. 707, 422 A.2d 1304 (1980).

The version of RSA 354-A:8, I, in effect at the time of the events leading to this appeal provided that it is an unlawful discriminatory practice:

> "I. For an employer, because of the . . . physical or mental handicap . . . of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

The applicable version of RSA 354-A:3, XIII, *as enacted by* Laws 1975, 476:1, defined "physical or mental handicap" for purposes of RSA chapter 354-A as a "handicap . . . unrelated to a person's ability to perform a particular job or position available to him. . . ." Based on this definition and a regulation further refining the meaning of "handicap," N.H. ADMIN. RULES, Hum 405.06, the school district argues that the petitioner cannot avail himself of the protection provided by RSA 354-A:8. Its argument is based on what it perceives as the disqualifying effects of the petitioner's asthma at each point pertinent to the nonrenewal decision. First, during the period when the petitioner's asthma caused him to be absent from school, the district argues that the asthma was not "unrelated to [the petitioner's] ability to perform a particular job." Second, conceding for purposes of argument that his prognosis has vastly improved, the district contends, citing part of the human rights commission regulation, that the petitioner's asthma is not a handicap because it no longer "sub-

stantially limits one or more major life activities." This argument too quickly assumes that medically-controlled asthma, that is, asthma sufficiently controlled so that the asthma sufferer can attend his or her employment without absence, cannot "substantially limit[] one or more major life activities." An inadequate record on this point, however, precludes an exploration of any present, substantial limitation in a major life activity the petitioner may suffer despite the avowed success of new medical treatment in alleviating the job performance effects of his asthma.

■ In any event, we need not attempt this inquiry because the petitioner is not asserting a present, substantial impairment of a major life activity. The commission's regulation Hum 405.06 describes the type of individual who is protected from discrimination by RSA chapter 354-A on the basis of his or her "handicap." It reads in full:

> *"Coverage.* Discrimination in employment on the basis of handicap shall include discrimination against any individual who:
> (a) has a physical or mental impairment which substantially limits one or more major life activities;
> (b) has a record of such an impairment;
> (c) is regarded as having such an impairment."

The way this regulation is drafted leaves open to question whether discrimination is prohibited against an individual only if all three factors are present or if any one factor is present. The language of this section, however, closely parallels that of 29 U.S.C. § 706(8)(B) (1988), which is written in the disjunctive. Section 706(8)(B) includes both past disability and perceived disability within the protection of the Federal Rehabilitation Act of 1973. *See School Bd. of Nassau County v. Arline,* 480 U.S. 273, 278 (1987) ("Congress expanded the definition of handicapped individual, so as to preclude discrimination against '[a] person who has a record of, or is regarded as having, an impairment [but who] may at present have no actual incapacity at all'") (quoting *Southeastern Community College v. Davis,* 442 U.S. 397, 405–06 n.6 (1979)). Absent evidence of a contrary intent, we read Hum 405.06 in the disjunctive, congruous with 29 U.S.C. § 706(8)(B). Under this reading, the petitioner is also protected against discrimination if he has a record of impairment in a major life activity or if he is perceived by the school district as presently having such an impairment, and this impairment is unrelated to his present ability to perform a particular job. The latter requirement is a result of the

definition of protected "physical or mental handicaps" contained in the applicable version of RSA 354-A:3, XIII, which provides that a protected handicap is one that is not performance-related.

A history of asthma attacks so severe that the petitioner was unable to attend to his employment for a substantial period of time and had to seek frequent medical help could constitute a record of impairment of a major life activity under subsection (b) of Hum 405.06. *See Arline, supra* at 281 (hospitalization "more than sufficient" to establish the requisite level of impairment). The belief on the part of the school district that the petitioner presently suffers from insufficiently-controlled, debilitating asthma could, similarly, constitute the necessary perception of an impairment under subsection (c) of the regulation. *See Pridemore v. Rural Legal Aid Soc. of W. Cent. Ohio,* 625 F. Supp 1180, 1185–86 (S.D. Ohio 1985) (employer could perceive a minor disfunction as limiting one or more major life activities, and this would bring the plaintiff applicant within the protection of federal handicap protection law). We view the petitioner's argument as falling solely within the ambit of subsection (b) of Hum 405.06—his defense to the charge that he is unfit to have his contract renewed by the school district is that, in spite of his record of job-related impairment, new medical treatment has eliminated this impairment. The record of job-related impairment was explicitly relied upon by the review boards below. The review boards expressly disregarded the evidence of improved medical condition.

Our analysis does not stop at determining the nature of the petitioner's claim, however. To enjoy the protections of New Hampshire law against handicap discrimination, the petitioner must next demonstrate that, according to RSA 354-A:3, XIII, his handicap is unrelated to his job-performance. Impliedly, he must also demonstrate that he is competent to do the particular job. Finally, he must establish that his handicap was the sole reason for his nonrenewal. *See Appeal of Bosselait,* 130 N.H. 604, 608-09, 547 A.2d 682, 687 (1988), *cert. denied,* 488 U.S. 1011 (1989).

■ Because New Hampshire's statutory scheme excludes present performance-related impairments from its definition of protected handicaps, the appropriate burden on a person asserting discrimination on the basis of a past record of such impairment is that the individual must prove (1) that he or she has only a *past* record of a substantial impairment, whether performance-related or not, and (2) that whatever present impairment may exist, it is not performance-related. Where, as in this petition, the record of past

impairment is undisputed, the individual's present level of impairment is the obvious focus of fact-finding. *See, e.g., Brown v. City of Portland,* 722 P.2d 1282, 1284–85 (Or. Ct. App. 1986) (under Oregon anti-discrimination law, a discharge was discriminatory where "there was no evidence that . . . there was a probability of *present* incapacitation") (emphasis in original). Given the possibility of sudden relapse found in some medical conditions (and the record here demonstrates that asthma is one of these), evidence negating the probability of future relapse may also be required.

In requiring that the aggrieved individual demonstrate that his or her handicap is not presently performance-related, the prosecution of a claim under RSA chapter 354-A differs from the prosecution of a claim under federal handicap discrimination law. The Federal Rehabilitation Act of 1973 imposes part of the burden of determining the relationship between the condition and the particular job on the employer. *Pushkin v. Regents of University of Colorado,* 658 F.2d 1372, 1387 (10th Cir. 1981). The plaintiff need merely demonstrate that nothing other than his or her handicap precludes a finding of job competence; the burden then shifts to the defendant to demonstrate that the handicap does affect the plaintiff's ability to perform the particular job. *Id.* As one court has phrased it, a two-prong procedure is applicable in which:

> "(1) [t]he plaintiff must establish a *prima facie* case by showing that he was an otherwise qualified handicapped person *apart from* his handicap, and was rejected under circumstances which gave rise to an inference that this rejection was based solely on his handicap; [and] (2) [o]nce plaintiff establishes his *prima facie* case, defendants have the burden of going forward and proving that plaintiff was not an otherwise qualified handicapped person, that is one who is able to meet all of the program's requirements *in spite of* his handicap, or that his rejection from the program was for reasons other than his handicap. . . ."

*Jasany v. United States Postal Service,* 755 F.2d 1244, 1250 n.5 (6th Cir. 1985) (citations omitted) (emphasis in original).

Proscribed handicap employment discrimination stems not only from the conviction that all those who presently suffer from the substantial impairment of a major life activity are unable to make a meaningful contribution in the workplace, but also from the belief that previously-incapacitated individuals can never again be entrusted with responsible employment. The school district conceded

throughout the proceedings below that, when he was not suffering from asthma attacks, the petitioner was a competent Spanish teacher. The petitioner then demonstrated, through positive medical evidence and an interim showing of improved attendance, that his handicap was unrelated to his ability to perform his teaching responsibilities. The reliance of the school board and the State Board on the petitioner's past record of impairment and the lay opinion of school officials concerning the petitioner's prognosis to establish his present or future qualification for the position of teacher was in error. *Cf. Appeal of Bosselait*, 130 N.H. at 609, 547 A.2d at 687 (stating that, with respect to a medical condition "uncommon to everyday experience . . . expert medical testimony [is required] before any conclusions can be drawn about its effect on the capacity to do a given job over a given time") (citation omitted); *see also Andersen v. Exxon Co.*, 89 N.J. 483, 497–98, 446 A.2d 486, 493 (1982) (under New Jersey handicap discrimination law, an employer could not rely on a cursory and incomplete medical report as its basis for determining suitability for an available position).

On the record before us, we hold that the petitioner made the more exhaustive showing required by New Hampshire law. The decision of the school district not to renew his contract violated RSA 354-A:8, I. The consecutive hearing boards erred in upholding this illegal decision, because each of them relied on the same faulty premise as the school district; *i.e.*, that the petitioner's record of past performance-related impairment alone sufficed to remove him from the protections of RSA chapter 354-A. As noted above, the analysis should not have stopped at the determination that the petitioner had in the past been deficient in his job performance. It remained to be determined whether the petitioner had met his burden under New Hampshire law of showing that, even if he continued to suffer an impairment, it was not performance-related. Hence, the hearing boards had to decide whether the petitioner's asthma caused his present job performance to be deficient or whether it made future deficient job performance probable. The evidence offered by the petitioner on this point was persuasive, and the decisions of the hearing boards, relying solely on the evidence of past impairment, were clearly in error. Accordingly, we reverse the decision of the State Board and order the petitioner reinstated.

As we have determined that the petitioner does enjoy the protections of RSA chapter 354-A, the direct causal link between his nonrenewal and his handicap is not seriously disputed by the school

district. Although past failure to attend to employment responsibilities can constitute adequate grounds for disciplinary action, the announced reason for the nonrenewal in this case was not disciplinary. Rather, the nonrenewal reflected the decision of the school district that the petitioner would continue to be unable to perform his teaching responsibilities as he had in the past. As already discussed, a purely retrospective determination of this type violates RSA 354-A:8, I.

In light of evidence that the petitioner apparently sought specialized medical treatment for his asthma only after being informed of the nonrenewal decision, the district argues that New Hampshire law should not protect individuals who refuse to seek medical attention for their impairments until threatened with the loss of employment. We concur with this argument, but we observe that it does not apply to the instant case. In *Franklin v. U.S. Postal Service*, 687 F. Supp. 1214 (S.D. Ohio 1988), the federal district court discussed the case of a discharged postal worker, suffering from a treatable form of paranoid schizophrenia, who claimed that her discharge violated federal law against handicap discrimination. *Id.* at 1216–17. Despite employer requests and even termination threats, the plaintiff refused to take consistently the medication which would keep her mental condition from deteriorating. *Id.* When she failed to take medication, the plaintiff became extremely violent both on- and off-duty, on one occasion attempting to force her way into the White House. *Id.* The district court determined that her condition resulted from a voluntary choice not to take medication and held that she was not an "otherwise qualified handicapped individual" entitled to protection under federal law. *Id.* at 1218–19.

■ In the petitioner's case, the consistently-proffered reason for his failure to seek the help of an asthma specialist was his confusion concerning his symptoms. He testified that he had actually sought medical help during some of his recent coughing attacks but, attributing them to colds and influenza, he went to a local clinic instead of a specialist. In addition, his specialists provided evidence that such confusion concerning asthma symptoms was not uncommon. Further, when the petitioner finally did consult a specialist, this physician did not simply instruct him on the virtues of maintaining his usual asthma medication, but prescribed for him a battery of new and more powerful drugs. Hence, the petitioner does not fall outside the protection of New Hampshire law by voluntarily refusing to maintain or improve his health.

We also note that the school district was not without the means to remedy the absentee problems earlier or, in the alternative, to acquire medical evidence to rebut the positive prognosis presented by the petitioner's physicians. Under RSA 200:36, the school superintendent had the authority to order the petitioner to undergo a medical examination to determine if he was fit to perform his duties.

As we hold that the State Board's decision was in error, we need not resolve the second issue raised by the petition: whether the State Board acted arbitrarily in refusing to hear the testimony of his specialist, Dr. Vraney. We discuss it here only to further illuminate our holding above respecting the proper analysis of a handicap discrimination claim under RSA chapter 354-A.

The petitioner maintains that Dr. Vraney would have testified (1) that the earlier absences were due to under-treatment of his asthma, (2) that the under-treatment was no fault of the petitioner, and (3) that the new course of treatment had controlled the asthma to such a degree that it would not interfere with the petitioner's job performance. The school district responds that this was a case where the State Board acted properly in refusing to hear the testimony, as the petitioner "failed to explain why the 'new evidence' he wished to produce at a rehearing could not have been presented at the original hearing." *O'Loughlin v. N.H. Personnel Comm'n*, 117 N.H. 999, 1004, 380 A.2d 1094, 1097 (1977). In the hearing before the State Board, the petitioner advanced an argument that further medical evidence was necessary because he could not have known at the earlier hearing that the school district's lay witnesses would make unqualified medical conclusions and that the school board would rely on these statements in reaching its decision. Without resolving the issue, we observe that many handicapping medical conditions are best understood with the aid of expert medical evidence, *Appeal of Bosselait*, 130 N.H. at 609, 547 A.2d at 687, and live testimony with cross-examination can be particularly helpful in reaching this understanding. Further, the affidavits introduced before the school board reflected each doctor's prognosis after only a few weeks of experience with the new treatment. We read the petitioner's request before the State Board as asking the opportunity to present medical evidence reflecting several months of subsequent treatment of the petitioner, which evidence did not exist at the time of the school board meeting, and which would buttress his assertions about his improved medical condition.

The final question presented in the original petition is whether utilizing the review procedures of RSA chapter 189 has foreclosed

the petitioner from prosecuting a complaint before the commission for human rights. We hold that it does not.

Our legislature has vested in the New Hampshire Commission for Human Rights power to remedy the effects of unlawful discriminatory practices, including the authority to order reinstatement and back wages. RSA 354-A:9, II(d). However, in order to discourage duplicative litigation, the legislature provided in RSA 354-A:13 (Supp. 1990) that:

> "[A]s to acts declared unlawful by RSA 354-A:8, the procedure herein provided shall, while pending, be *exclusive* and the final determination therein shall *exclude any other action, civil or criminal,* based on the same grievance of the individual concerned. If such individual institutes any action based on such grievance without resorting to the procedure provided in this chapter, he may not subsequently resort to the procedure herein."

(Emphasis supplied.) The school district asserts that this provision forecloses the petitioner from prosecuting his complaint before the commission for human rights as he has already availed himself of the procedure for contesting his nonrenewal under sections 14-a and 14-b of RSA chapter 189.

■■ This argument becomes untenable, however, upon examination of each statutory scheme. Section 13 of RSA chapter 354-A, as already noted, provides a restricted procedure for the remedy of discrimination complaints in order to discourage duplicative, and possibly inconsistent, litigation. Chapter 189 nonrenewal hearings, by contrast, are optional internal administrative proceedings which are available to teachers whose contracts are not being renewed and are aimed at developing a final, reasoned decision on the issue whether or not to renew a teacher's contract. At the time of contesting a nonrenewal decision, the teacher has not yet been dismissed from employment but, rather, has been told that he or she will not be continuing in that employment during the next school year, *Brown v. Bedford School Board,* 122 N.H. 627, 629–31, 448 A.2d 1375, 1377 (1982), and has the option of having this decision reviewed at both the school district and the State Board level. In contrast to the panoply of remedies available upon application to a court or to the human rights commission, RSA 354-A:9, II(d), the local school board and the State Board are limited to approving or disapproving the decision not to renew. Although RSA chapters 189 and 354-A both provide protection against unjust removal, *see, e.g., Petition of*

*Gorham School Board*, 121 N.H. at 880–81, 436 A.2d at 76, proceedings under RSA chapter 189 do not rise to the level of "criminal or civil" legal actions as contemplated by RSA 354-A:13. Thus, the petitioner's use of the procedures available to him under RSA chapter 189 did not foreclose recourse to the commission and its expertise in reviewing complaints of unlawful discriminatory practices. Nor does the doctrine of res judicata bar further proceedings, because our decision holds merely that the State Board's conclusion was incorrect as a matter of law and does not touch upon the issue of damages, if any, for discriminatory nonrenewal. We do not address the possibility of collateral estoppel.

We turn now to the final issue in this case: whether, in the absence of an applicable statutory provision, the full, reasonable transcription costs in a certiorari review are to be assessed initially against the petitioner, or whether these costs are to be limited to the amounts specified in RSA 541:11.

The attorney general, arguing on behalf of the State Board, asserts that the applicable statute is RSA 541-A:16, VII (Supp. 1990), the pertinent part of which provides that, in "contested cases," "[u]pon the request of any party, or upon the agency's own initiative, [the] record [of oral proceedings before the state agency] shall be transcribed if the requesting party, or agency, shall first pay *all reasonable* costs for such transcription." (Emphasis supplied.)

The petitioner asserts that his liability for transcription costs is limited under RSA 541:11. That section reads:

> "The commission [*i.e.*, the administrative agency from whose decision the party is appealing] shall collect from the party making the appeal a fee of ten cents per folio of one hundred words for the copy of the record and such testimony and exhibits as shall be transferred, and five cents per folio for manifold copies, and shall not be required to certify the record upon any such appeal, nor shall said appeal be considered, until the fees for copies have been paid."

The Administrative Procedure Act, *codified at* RSA chapter 541-A, governs State agency rulemaking and adjudicatory proceedings. Despite its use of the phrase "contested cases," RSA 541-A:1, III, :16, I (Supp. 1990), the statute does not expressly mention either appeal or writ of certiorari challenging the decision of a State agency. The title of RSA chapter 541, the pertinence of which is urged by the petitioner, represents that it is applicable to "Rehearings and Appeals in Certain Cases"; its definition section, RSA 541:1 (Supp. 1990), indi-

cates only rehearings and appeals, not writs of certiorari, as the object of the chapter.

■ Where a statutory scheme provides no mechanism for direct appeal of an agency decision, as is the case with RSA chapter 189, this court has held that a petition for writ of certiorari is the proper vehicle for obtaining review. *Chauffeurs Local Union No. 633 v. Silver Bro's, Inc.*, 122 N.H. 1035, 1036–37, 453 A.2d 1292, 1293 (1982). The question then is what procedural and other non-substantive rules apply to petitions for certiorari. The *per curiam* decision in *Chauffeurs Local* is particularly instructive here because, in that case, RSA chapter 273 provided no means for judicial review of a board of conciliation and arbitration decision. *Id.* In addressing a timeliness of filing issue, the court noted that, as there was no provision setting time limits in which to file a petition for a writ of certiorari, the exercise of its discretion in dismissing a petition because of untimeliness would be informed by "a substantially analogous statute or situation," in that case, the thirty-day period for appeals found in RSA 541:6. *Id.* at 1037, 453 A.2d at 1293.

Although *Chauffeurs Local* employed RSA 541:6 as the most analogous statute, the court utilized the time limits contained therein only as a guideline in its exercise of discretion in determining the timeliness of a petition for writ of certiorari. *Id.* Further, RSA 541-A:16, VII postdates *Chauffeurs Local* by one year. Laws 1983, 455:6. Hence, the decision there by no means resolves the present conflict in favor of RSA chapter 541 over RSA chapter 541-A.

■■ "When a conflict exists between two statutes, the later statute will control, especially when the later statute deals with a subject in a specific way and the earlier enactment treats that subject in a general fashion." *Board of Selectmen v. Planning Board*, 118 N.H. 150, 152, 383 A.2d 1122, 1124 (1978); *see also Petition of Public Serv. Co. of N.H.*, 130 N.H. 265, 283, 539 A.2d 263, 274 (1988), *appeal dismissed*, 488 U.S. 1035 (1989). Whereas the present dispute involves the question which statute is applicable by analogy rather than applicable by being directly controlling, it is persuasive that our legislature has so recently expressed its desire that, in a substantial number of State agency matters, the full reasonable costs of transcription be borne by the requesting party. We note further that there are other recent enactments specifically placing agency proceeding transcription costs directly on the requesting party. *See, e.g.*, RSA 354-A:9, II(c) (transcript costs in a commission for human rights hearing shall be borne by the requesting party). Therefore, we

determine that the rule applicable by analogy is that contained in RSA 541-A:16, VII. In a certiorari proceeding challenging an agency decision, payment of the full, reasonable transcription costs is the obligation of the petitioner in the first instance. We observe that the prevailing party in a case like this may now recover transcription costs under Supreme Court Rule 23. However, transcription costs were made recoverable only by an amendment to Rule 23, effective on February 26, 1990, and this amendment applies only prospectively to cases filed in this court on or after that date.

*Petition granted; decision reversed.*

BROCK, C.J., dissented; THAYER, J., did not sit; the others concurred.

BROCK, C.J., dissenting: I agree with the court that the petitioner's asthma "could constitute a record of impairment of a major life activity . . ." and that the burden is upon the petitioner to demonstrate that "whatever present impairment may exist [, if any], it is not performance-related." But, as the court recognizes, this determination requires facts to support these arguments, and these facts are best handled by the tribunal whose function includes finding the facts based upon the application of the correct legal standards.

The court, today, announces legal standards under New Hampshire's handicap discrimination laws for the first time. The State Board of Education, in considering the petitioner's claim, has never had the opportunity to develop or consider the facts relevant to the court's newly announced standards. Because, on an appeal based upon a writ of certiorari, we apply a deferential standard of review to the State Board of Education's factual determinations, *see Petition of Bagley*, 128 N.H. 275, 282, 513 A.2d 331, 336 (1986), I would remand the case to the State Board to allow it to consider the petitioner's claim in light of the standards announced today by the court.