Hillsborough,
No. 5773.

ABBIE M. PETERSON, *Ex'x & a.*

*v.*

JOHN J. REILLY, INC. *& a.*

November 28, 1969.

2

*Fisher, Parsons, Moran & Temple* (*Mr. Harold D. Moran* orally), for the plaintiff Joseph E. Michael Realty Corp.

*James M. Winston* (by brief and orally), for the plaintiff Jutras Neon Signs, Inc., and *pro se* for the plaintiff James M. Winston, Trustee in Bankruptcy.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *J. R. Falby, Jr.* (*Mr. John N. Nassikas* orally), *pro se*, and for the defendants Warren N. P. and Marjorie F. Wurm.

DUNCAN, J. Following the decision of this court in *Peterson v. Reilly*, 105 N. H. 340, the Superior Court entered an order for distribution out of the fund derived from the execution sale of premises of Rice-Varick Hotel, Inc. (See *Wurm v. Reilly*, 102 N. H. 558), which provided in part for the establishment of a fund of $24,159 "as the full share of Warren and Marjorie Wurm in the sale fund." The order further provided that the fund should be held subject to trustee process against the Wurm interest in several pending actions and the claimed attorney's lien asserted by counsel for the Wurms, pending determination of these several claims. See *Peterson v. Reilly, supra*, 354, 355. Thereafter the Master who heard the previous proceedings (*Arthur H. Nighswander, Esq.*) was appointed to hear and determine four of the five actions pending against the Wurms in which trustee process had been served, and to determine the relative priorities of eight different claims to the $24,159 fund, including those five, as well as the claim of counsel for the Wurms.

By later orders of the Superior Court, payment to Attilio and Gladys Baldini in the total sum of $8,100 was made from the Wurm fund, to be charged against the interest of Warren Wurm.

The report of the Master filed on July 21, 1965, as supplemented and amended on September 21, 1965, was approved by the Superior Court (*Keller*, J.) on February 28, 1966. Thereafter the questions of law presented by the exceptions of the Wurms and of their counsel, the firm of Wiggin, Nourie, Sundeen, Nassikas & Pingree, were reserved and transferred by the Presiding Justice.

The issues presented in this court relate exclusively to the relative priority of the several claims to the fund in question. The effect of the order approving the Master's report was to award one-half of the fund in dispute to Michael Realty Corporation, and one-half to Warren and Marjorie Wurm; and to allow against the interest of the Wurms the previously mentioned claim of Attilio and Gladys Baldini in the sum of $8,100. The remainder of the Wurm interest in the sum of $3,979.50 was adjudged to belong in equal shares to Warren and Marjorie Wurm, and the share of Warren Wurm was held to be subject to the claims of the trustee in bankruptcy in the sum of $1,250, and Jutras Neon Signs, Inc. in the sum of $1,700. The claim of counsel was held to be without priority, on the ground that the trustee process in the several actions brought against the Wurms attached prior to the effective date of the statute establishing an attorney's lien. RSA 311:13.

On behalf of the Wurms and their counsel it is contended that counsel have a valid lien securing the payment of fees and expenses in this litigation which amount to $10,235, and should have priority over the claims of attaching creditors of the Wurms; and that Michael Realty Corporation has no claim enforceable in equity, or at most a claim to only $4,500 with accrued interest. The arguments of Michael Realty Corporation support the Master's decision, while those of Jutras Neon Signs, Inc, question the ruling that Marjorie Wurm has a separate interest in the fund, but support the decision with respect to the attorney's lien.

The decision of the Master that Michael Realty Corporation has a one-half interest in the fund is sustained. It is true that the fund represents the extent to which the second and third mortgages upon the Rice-Varick Hotel were previously held to be valid as against attaching creditors of the bankrupt (*Peterson* v. *Reilly, supra*), and that the principal amount of the fund was derived from the amounts of $9,000, and $8,000, advanced to the Rice-Varick Hotel under the second and third mortgages respectively, by Warren Wurm, which were held to be validly secured against the claims of creditors of the bankrupt mortgagor. The balance of the fund consists of accrued interest upon this $17,000. The conflicting claims with which we are now concerned are those of the assignee, and of creditors, of Warren and Marjorie Wurm, who assert interests in the fund by virtue

of assignment, or trustee process, or an attorney's lien. An attachment was made on behalf of the Baldinis before counsel first appeared for the Wurms. The trustee writs served on behalf of the other claimants herein were served after the appearance of counsel for the Wurms on May 11, 1960, but before May 23, 1963, the effective date of the statute establishing an attorney's lien. RSA 311:13, *supra*.

The second mortgage of $40,000 given by Rice-Varick Hotel, Inc. to Warren and Marjorie Wurm was executed under date of April 1, 1957 and recorded on May 13, 1957. On October 15, 1957 the Wurms assigned a one-half interest in this mortgage to Michael Realty Corporation. *Peterson* v. *Reilly,* 105 N. H. 340, 345, *supra.* This assignment was under seal and according to the findings of the Master was supported by consideration which consisted of the agreement of Michael Realty Corporation to advance $55,000, of which $35,000 was to be secured by the third mortgage given by Rice-Varick Hotel, Inc. on September 12, 1957. See *Peterson* v. *Reilly, supra,* 345. While the advances made by Michael Realty Corporation pursuant to this agreement were not validly secured as against creditors of the bankrupt mortgagor, as between the Wurms and Michael Realty Corporation their agreement was valid. The Master found "that there was consideration . . . in fact in that Michael Realty Corporation agreed to advance monies to Rice-Varick Hotel, Inc. which was then operated by Warren Wurm . . . taking a third mortgage in which [it] was to have a seven-fifteenths interest and the Wurms an eight-fifteenths interest." The Master then ruled "that recovery on the second mortgage belongs one-half to . . . Michael Realty Corporation" and that the "attorney's lien [of Wurms' counsel] cannot attach to any amount due . . . Michael Realty Corporation." The ruling that one-half of the fund belongs to Michael Realty Corporation is supported by the evidence and is sustained.

The arguments of the defendants Wurm that the mortgage assignment should not affect the fund in question, because the fund represents advances by Wurm and not by Michael Realty Corporation, and that in any event Michael Realty Corporation's interest should not exceed $4,500 plus accrued interest upon that amount because $9,000 was all that was derived from the second mortgage, cannot be upheld. As against creditors of the bankrupt, the two mortgages were valid only to the extent of

$17,000 advanced by the Wurms. However, as between the Wurms and Michael Realty Corporation the terms of their agreements remain controlling. The credits to the bankrupt mortgagor against the mortgages are properly applied against the second mortgage, to which the third mortgage was expressly made subject; and the ruling that Michael Realty Corporation has a one-half interest in these credits against the second mortgage by virtue of the assignment is free from error.

We turn next to consideration of the claim of counsel to a lien to secure the payment of charges for services and expenses in these proceedings, in the sum of $10,235. In the prior proceedings in which the same claim was presented, in a lesser amount due as of April 20, 1962, the Master ruled that there was a lien, but that it was "limited to legal fees and disbursements . . . to the extent includable in taxable costs." *Wells* v. *Hatch*, 43 N. H. 246; *Whitcomb* v. *Straw*, 62 N. H. 650. In this court the matter was not passed upon, since other parties then before the court were not affected. *Peterson* v. *Reilly*, 105 N. H., *supra*, 355. Counsel for the Wurms now argue, as they did on the former transfer, that the 1963 statute relating to attorney's lien (RSA 311:13, *supra*) is but declaratory of the common law, and that a common law lien arose in their favor which related back to the date when counsel first appeared for their clients on May 11, 1960. See *Weed Sewing Machine Co.* v. *Boutelle*, 56 Vt. 570. Alternatively they argue that their charges should be held to have been secured by an equitable lien, apart from statute, because their services resulted in establishment of the fund now under consideration and inured to the benefit of all entitled to share therein. *United States* v. *Kamieniecki*, 261 F.S. 683 (D.C. N. H. 1966); *Sprague* v. *Ticonic Bank*, 307 U. S. 161, 166.

We think it plain that the statute cannot be held to have been declaratory of New Hampshire law as it existed prior to adoption of the statute. *Wells* v. *Hatch, supra; Whitcomb* v. *Straw, supra*. Nor do we consider that the statute may be applied retroactively in this case, even though remedial in nature. Const., Pt. I, *Art.* 23d; *Simpson* v. *Savings Bank*, 56 N. H. 466, 471. See *Bourque* v. *Adams*, 93 N. H. 257. We would not be justified in this case in following the views expressed in *United States* v. *Kamieniecke, supra*. Michael Realty Corporation was represented in the proceedings by its own counsel as early as 1959, and

other creditors involved likewise participated in the litigation which produced the fund. We therefore sustain the ruling of the Master as confirmed by the Trial Court, that the charging lien of the attorneys for the Wurms in the amount of $10,235 against funds payable to the Wurms is subject to the Baldini claim of $8,100, the claim of the trustee in bankruptcy in the sum of $1,250 and the claim of Jutras Neon Signs, Inc. in the sum of $1,700, to have priority in the order stated.

The report of the Master with respect to the current disputes determined that after the payment of the Baldini claim (which has now been paid as previously indicated), the balance of the Wurm half of the fund, amounting to $3,979.50 plus accrued interest, "belongs in equal shares to Warren N. P. and Marjorie Wurm." By amendment, the Master ruled that the claim of the trustee in bankruptcy in the sum of $1,250 should be satisfied out of the interest of Warren Wurm, with priority over the claims of counsel and Jutras Neon Signs, Inc. Thus it is evident that the amount of $1,989.75 thus allocated to Warren Wurm, with the added amount from the $200 cash bond deposited by him, will be exhausted by payment of the claim of the trustee and partial payment of Jutras Neon Signs, Inc., leaving only the share of Marjorie Wurm in the sum of $1,989.75 to be applied against the claim of counsel.

It is argued on behalf of Jutras Neon Signs, Inc. that it was error to allocate to Marjorie Wurm one-half of the $3,979.50 balance of the Wurm share of the proceeds attributable to the second mortgage. The mortgage ran to Warren and Marjorie Wurm jointly. The Master's findings and ruling in regard to the $3,979.50 balance were based upon the evidence concerning transactions leading to execution of the mortgage: "The evidence tended to show that Warren Wurm and his wife had started out together in a small business which was built up through their common efforts, their funds being intermingled; a large sum of money was used to purchase a life insurance policy on the life of Warren Wurm, payable to his wife Marjorie Wurm, as beneficiary; that he borrowed money, using this policy as collateral, which was invested in the Rice-Varick Hotel; that the mortgage was given to secure some of the advances made. Putting the name of Marjorie Wurm on the note and mortgage was not intended as a gift or to defraud creditors but to protect her interest in the insurance policy, and in recognition of her

contribution to their common funds over a period of several years." The Master ruled that the recording of the mortgage was equivalent to delivery of the instrument, and that Marjorie's acceptance of her one-half interest was signified by her action of October 15, 1957 assigning a one-half interest to Michael Realty Corporation.

The argument of Jutras Neon Signs, Inc. is based upon the contention that there never was delivery of the mortgage by Warren to Marjorie, so that she never acquired title. The circumstances disclosed with respect to the passbook in *Dover &c. Bank* v. *Tobin*, 86 N. H. 209, relied upon by Jutras Neon Signs, Inc., are clearly not analogous to those of this case, and the decision cannot be considered controlling here. In that case there was no disposition of the passbook by the donor which would compare with the recording of the mortgage deed in this case. Nor did the purported donee there exercise any dominion over the passbook which would correspond to Marjorie Wurm's assignment of the mortgage. The issue before the Master was primarily one of fact. *Newbury* v. *Parsons*, 103 N. H. 96. The finding that Warren intended to make a completed transfer of a one-half interest to Marjorie when the mortgage was placed on record, coupled with the finding that her subsequent acceptance of that interest was established by her assignment of it, is supported by the record and is sustained. *Newbury* v. *Parsons, supra.*

We find no error in the proceedings called in question by the exceptions transferred, and the order is

*Exceptions overruled.*

All concurred.