LeBlond v. Davis Oil, et al          CV-96-326-B    09/12/97

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Kevin and Cheryl LeBlond**

    **v.**                                                                    C-96-326-B

**Davis Oil Co., Inc.**

**_____v.**

**National Service Group, Inc.**


**MEMORANDUM AND ORDER**

Third party defendant National Service Group, Inc. ("NSG") moves pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings on the third party complaint brought by Davis Oil Co., Inc. ("Davis"). For the following reasons, I deny the motion.


## I.     Background

Kevin LeBlond, a resident of Maine, was injured while working for his employer, NSG, a Maine corporation. The injury occurred in Keene, New Hampshire, while LeBlond was performing services on premises owned by Davis. LeBlond was working pursuant to a contract between NSG and Davis whereby NSG would perform maintenance on Davis's fuel oil storage tanks. LeBlond collected benefits under Maine's Workers' Compensation Act after

his injury.

LeBlond then filed a diversity action against Davis. LeBlond alleges he was injured when an explosion and flash fire occurred while he was spraying the interior of a fuel tank with an epoxy coating.  The LeBlonds seek damages based on: (1) Davis's vicarious liability for inherently dangerous work performed by NSG; (2) respondeat superior liability as a result of Davis's role as a principal for its agent NSG;[1] and (3) Davis's own negligence in its selection, employment, supervision, and instruction of NSG.  Cheryl LeBlond asserts a claim for loss of consortium.

After the LeBlonds filed their action, Davis brought a third party complaint against NSG for indemnification.  Davis asserts that its liability, at least under the LeBlonds' first two theories of recovery, is based solely on NSG's negligence.  Davis alleges that NSG acted as an independent contractor, exercised exclusive control over repairs, and assumed responsibility for job site safety.

NSG now moves for judgment on the pleadings, asserting that

---

[1]  The LeBlonds allege that NSG negligently permitted a heat source to be located in dangerous proximity to flammable materials, negligently failed to properly ventilate work areas, and negligently failed to instruct and train its employees.

2

the Maine Workers' Compensation Act gives it immunity from indemnification actions brought by third party plaintiffs to recover damages based on its employee's injury. Davis counters that the issue is controlled by New Hampshire law which allows such actions. I deny the motion for judgment on the pleadings because I conclude that New Hampshire law applies and, under New Hampshire law, Davis's third party complaint adequately alleges an actionable claim for indemnification.

## II.   **STANDARD**

The standard governing Rule 12(c) motions is essentially the same as the standard governing Rule 12(b)(6) motions. <u>Massachusetts Candy & Tobacco Distr., Inc. v. Golden Distr. Ltd.</u>, 852 F. Supp. 63, 67 (D. Mass. 1994). Both motions require that all material allegations in the complaint are to be construed in the light most favorable to the plaintiff. <u>Gaskell v. Harvard Coop. Soc.</u>, 3 F.3d 495, 497 (1st Cir. 1993). Moreover, a motion based on either rule can be granted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of its claims which would entitle it to relief." <u>See</u> <u>International Paper Co. v. Town of Jay</u>, 928 F.2d 480, 482-83 (1st Cir. 1991) (citations and quotations omitted).

3

## III.    ANALYSIS

### A.    Does a Conflict Exist?

The first step in resolving any choice of law dispute is determining whether a conflict exists.  Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993).  Thus, I begin by examining the relevant Maine and New Hampshire precedents.

Both Maine and New Hampshire recognize that covered employers are immune from actions for contribution based on injuries sustained by the employers' workers.  Me. Rev. Stat. Ann. tit. 39-A, § 104 (West 1996) (workers' compensation immunity provision); Roberts v. American Chain & Cable Co., 259 A.2d 43 (Me. 1969) (extending immunity to contribution actions); N.H. Rev. Stat. Ann. § 281-A:8 (Supp. 1996) (workers' compensation immunity provision); N.H. Rev. Stat. Ann. § 507:7-f (1997) ("No right of contribution exists against a person who is immune to the claim which would otherwise give rise to a right of contri-bution.").

Under Maine law, covered employers like NSG are also immune from indemnification claims unless the employer clearly waives its immunity under the Workers' Compensation Act.  Diamond Int'l Corp. v. Sullivan and Merritt, Inc., 493 A.2d 1043, 1044 (Me. 1985). Davis does not claim that NSG expressly waived immunity

4

from suit for indemnification. Therefore, its claims cannot succeed if they are subject to Maine law.

New Hampshire law, in contrast, does not require a clear waiver of workers' compensation immunity in order to maintain an indemnification claim against a covered employer. Wentworth Hotel, Inc. v. F.A. Gray, Inc., 110 N.H. 458, 461 (1970). Indemnity agreements are rarely implied in New Hampshire. Royer Foundry & Mach. Co. v. New Hampshire Grey Iron, Inc., 118 N.H. 649, 652 (1978). However, the New Hampshire Supreme Court has twice found an implied duty to indemnify. See Sears, Roebuck & Co. v. Philip, 112 N.H. 282 (1972); Wentworth Hotel, 110 N.H. at 458. In each of those cases:

> the indemnitor had agreed to perform a service for the indemnitee. In each, the indemnitor was assumed to have performed negligently. And in each, the result was a condition that caused harm to a third person in breach of a non-delegable duty of the indemnitee. In neither was the indemnitee assumed to have been negligent, at least beyond a failure to discover the harmful condition.

Dunn, 140 N.H. at 123 (citations and quotations omitted). Thus, the right to indemnity arises in tort actions "only where one who, without fault on his part, has been compelled by a legal obligation to pay an injured party for injuries caused by the fault of another." William H. Field Co. v. Nuroco Woodwork, Inc., 115 N.H. 632, 634 (1975) (citing Morrissette v. Sears,

Roebuck & Co., 114 N.H. 384, 387 (1974)).

The LeBlonds' complaint in this case alleges Davis's liability based on three theories:  (1) vicarious liability based on the actions of NSG as Davis's contractor; (2) liability based on the actions of NSG as Davis's agent; and (3) liability based on Davis's negligence.  Under the first two theories, Davis can be found liable even if it is found to be free of negligence itself.  Thus, under New Hampshire law, Davis may be entitled to claim indemnification from NSG even though NSG is a covered employer.

Since Davis's claim for indemnification states a claim for relief under New Hampshire law but not under Maine law, a conflict exists and I must determine which state's law applies.

B.   **Choice of Law Principles**

It is axiomatic that federal district courts apply state substantive law in diversity actions.  Crellin Technologies, Inc. v. Equipmentlease Corp., 18 F.3d 1, 4 (1st Cir. 1994) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  In determining which state's substantive law applies to a particular question, the district court must employ the choice of law framework of the forum state, here, New Hampshire.  Id. (citing

<u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 491 (1941)).[2]

The New Hampshire Supreme Court recently applied its general choice of law framework to a workers' compensation action in <u>Benoit v. Test Systems, Inc.</u>, 694 A.2d 992 (N.H. 1997). In that case, Sandra Benoit, a New Hampshire resident, was injured while performing work at Test System's place of business in New Hampshire. E.D. Associates, a Massachusetts temporary employment agency, had assigned Benoit to work at Test Systems. While working there, Benoit was under Test System's exclusive control and they suppled her with the material and tools necessary to complete her tasks. <u>Id.</u> at 993. Pursuant to an agreement between Test Systems and E.D. Associates, E.D. Associates provided workers' compensation insurance for Benoit. <u>Id.</u>

The New Hampshire Supreme Court concluded that Benoit's suit against Test Systems for negligence would be barred under New

---

[2] Because both New Hampshire and Maine have significant contacts to this action, it does not implicate the constitutional concerns that can arise in choice of law cases. In the context of workers' compensation law, significant contacts exist in the state where the injury occurs, the state where the employment relationship is created, and the state where the injured employee resides. <u>Carroll v. Lanza</u>, 349 U.S. 408, 412 (1955). In this case, the injury occurred in New Hampshire; the employment relationship between LeBlond and NSG was centered in Maine; and the LeBlonds reside in Maine. Thus, the contacts with Maine and New Hampshire are sufficient to justify the application of either state's law without violating the full faith and credit clause of the United States Constitution.

Hampshire law because of the "borrowed servant" rule, which obligates borrowing employers to provide payment of workers' compensation benefits to borrowed servants that qualify as "employees." Id. at 993-94. Borrowing employers are entitled to immunity from employee tort suits in exchange for this obligation, and this immunity "remains even if the borrowing employer delegates the duty to provide workers' compensation benefits to the lending employer and the employee receives workers' compensation benefits."[3] Id. at 994-95. In contrast, the court determined that under Massachusetts law, "lending employers, not borrowing employers, generally enjoy the immunity concomitant with providing workers' compensation benefits." Id. at 994.

The court in Benoit concluded that New Hampshire law applied, barring Benoit's claim. Id. at 996. As it has in other choice of law cases, the court applied the five choice-influencing considerations that it originally adopted in Clark v. Clark, 107 N.H. 351, 354-55 (1966) (citing Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U. L. Rev. 267 (1966)). Those considerations are: "'(1) the predictability of results; (2) the maintenance of reasonable orderliness and

_____

[3] As the question is not before me, I express no opinion here as to whether Davis is a "borrowing employee" entitled to immunity in the underlying action against LeBlond.

8

good relationships among the States in the federal system; (3) simplification of the judicial task; (4) advancement of the governmental interest of the forum; and (5) the court's pre-ference for what it regards as the sounder rule of law.'" Benoit, 694 A.2d at 995 (quoting LaBounty v. American Ins. Co., 122 N.H. 738, 741 (1982)).

NSG and Davis suggest that the factors described in the Restatement (Second) of Conflict of Laws should determine the choice of law in this case. See Restatement (Second) of Conflict of Laws §§ 6, 145, 173, 184 cmt. c., and 188(2) (1971). While the New Hampshire Supreme Court has recognized "that, for specific problems, the 'choice influencing considerations' [of Clark] do not provide enough guidance to reach the correct result," Glowski v. Allstate Ins. Co., 134 N.H. 196, 198 (1991) (applying Restatement test in an insurance contract case), the court has also noted that "[i]n actual fact, the policy behind the Second Restatement substantially mirrors those considerations contained in Leflar's work." Id. Benoit makes clear that New Hampshire considers the Clark choice influencing considerations to be the appropriate factors to apply to choice of law disputes in workers' compensation cases. Even if it were also appropriate to consider the principles found in the Restatement (Second) of

9

Conflict of Laws, however, my decision that New Hampshire law applies in this case would not differ.[4]

## C.   **Which Law Applies?**

The third Clark factor, simplification of the judicial task, is of little weight in this indemnification action.  If Maine law applies, Davis's action will be dismissed.  If New Hampshire law governs, the action will go forward on a theory of implied indemnification, an issue of relative clarity in New Hampshire. See Dunn, 140 N.H. at 122-24; Collectramatic, Inc. v. Kentucky Fried Chicken Corp., 127 N.H. 318, 320-21 (1985).

---

[4]  NSG urges that I follow Wenberry Assoc. v. Fisher Dev., Inc., No. 97-C-94 (N.H. Super. Ct. July 9, 1997) (applying Maine workers' compensation immunity law to bar indemnification action).  Judge Nadeau's decision in Wenberry is carefully reasoned.  Nevertheless, I ultimately find it unpersuasive.  In any event, her choice of law analysis is not necessary to the result.  As she notes, Wenberry, the party seeking indemnification, was alleged to be liable in the underlying action because of its own negligence.  See Wenberry, slip op. at p. 2 (noting that Wenberry is alleged to be negligent in the action underlying its contribution claim).  Under such circumstances, it would not be entitled to indemnification under either Maine or New Hampshire law.  See Dunn v. CLD Paving, Inc., 140 N.H. 120, 123 (1995) (negligent indemnitee is not entitled to recover on an implied indemnification theory).  Thus, I agree with Judge Nadeau's ultimate conclusion that the indemnification claim in Wenberry cannot survive even though I am not persuaded by her choice of law analysis.

10

Similarly, the second Clark factor, the maintenance of reasonable orderliness and good relationships among the states, is not relevant to my choice of law decision. Maine, of course, has an interest in regulating the relationship between Maine corporations and Maine employee-residents. This interest is enshrined in Maine's comprehensive workers' compensation scheme. Allowing Davis's indemnity action against NSG to proceed would undermine the broad immunity Maine law provides to its employers and could adversely impact Maine's interest in administering its law, "frustrat[ing] the efforts of that state to restrict the cost of industrial accidents and to afford a fair basis for predicting what those costs will be." Elston v. Industrial Lift Truck Co., 216 A.2d 318, 323 (Pa. 1966) (citation and quotation omitted). This does not mean, however, that the application of New Hampshire law will disrupt the "reasonable orderliness and good relationship" between Maine and New Hampshire. For while "[o]pen disregard of another state's clear interests might have bad effects," Clark, 107 N.H. at 354, "'no more is required' [under the second Clark factor] 'than that a court not apply the law of a State which does not have a substantial connection with the total facts and the particular issue being litigated.'" Benoit, 694 A.2d at 995 (quoting LaBounty, 122 N.H. at 742-43).

11

New Hampshire has a substantial connection to the issues in this case.  See, supra, n.2.

The other three Clark factors all favor the application of New Hampshire law.  The first factor, predictability of results, "'basically relates to consensual transactions, in which it is important that parties be able to know in advance what law will govern a transaction . . . .  Reliance upon a predictable choice of law protects the justifiable expectations of the parties [, and] . . . assures uniformity of decision regardless of forum." Benoit, 694 A.2d at 995 (quoting Ferren v. General Motors Corp., 137 N.H. 423, 426 (1993)).  As in Benoit, the tort in this case occurred within the context of a contractual relationship between the parties.  Moreover, LeBlond's employment in New Hampshire was "deliberate rather than being simply fortuitous." Id. (citation omitted).[5]  However, since the parties apparently did not anticipate the issue by agreeing in advance on how choice of law issues would be resolved, I look to which state's law reasonable parties would have expected to apply to future disputes.

_____

[5] Had the parties included an indemnification or choice of law provision in their contract, it would take precedence over the laws of either Maine or New Hampshire.  See Allied Adjustment Serv. v. Heney, 125 N.H. 698, 700 (1984).  To the extent that NSG wanted Maine law to apply, or specifically wanted to avail itself of Maine's workers' compensation law, it could have inserted a Maine choice of law provision in the contract.

12

The underlying factual basis for the indemnification action between Davis and NSG is the contractual relationship between them. While the employment relationship between NSG and Mr. LeBlond, based in Maine, is relevant, the relationship central to this indemnification action is the relationship between NSG and Davis, a relationship based on their contract for services in New Hampshire. See, e.g., Wentworth Hotel, 110 N.H. at 461 (noting that indemnification claim by borrowing employer against lending employer arises from "the relationship of the parties created by the contract"). Because the contract was for services to be performed in New Hampshire, NSG should reasonably have expected that New Hampshire law would apply to any action Davis asserted against it.[6] A contrary result would create the uncertain situation whereby Davis's rights to indemnification would be based predominantly on the location of its servants' primary

---

[6] NSG contends that it reasonably expected that it was immune from all tort liability arising from injuries to its employees. I reject this argument. NSG could have reasonably expected Maine law to apply to a contract with a Maine company for services to be performed in Maine. NSG also could have reasonably expected that it would be immune from actions brought directly by its employees regardless of where they were working. It is far less reasonable, however, for NSG to expect immunity from third-party actions for indemnification brought by out-of-state corporations that arose from work performed outside of Maine.

13

place of business.  Cf. Barringer v. State, 727 P.2d 1222, 1226 (Id. 1986) (noting that factors of certainty and predictability are undermined when choice of law depends on the happenstance of the defendant's domicile).  Therefore, I conclude that the first Clark factor, predictability of results, favors the application of New Hampshire law.

The fourth Clark factor is the advancement of the governmental interests of New Hampshire, the forum state.  New Hampshire allows its corporate citizens to recover indemnification in those instances where they are not negligent, but are still liable for torts committed within the state.  See Wentworth Hotel, 110 N.H. at 459-461.  New Hampshire has an interest in distributing liability fairly between non-negligent but liable third-party plaintiffs and responsible third-party defendants, and it has placed this interest above employers' interests in reliably predicting future liability for injury to their employees.  This choice-influencing factor, therefore, favors the application of New Hampshire law.

Likewise, the final Clark factor, preference for the sounder rule of law, favors the application of New Hampshire law.  As noted above, there are sound arguments both for and against allowing third-party actions for indemnity.  As a federal court

14

attempting to apply New Hampshire's choice of law principles as the New Hampshire Supreme Court would, it is not my task to choose what I consider the sounder rule of law, but rather to predict what New Hampshire's highest court would decide is the sounder rule.

It is said that the controversy between allowing or foreclosing third-party actions for contribution or indemnity is "'[p]erhaps the most evenly-balanced controversy in all of compensation law.'" In re Air Crash Disaster, 86 F.3d 498, 542 (6th Cir. 1996) (quoting 2B Arthur Larson, Workmen's Compensation Law § 76.11 (1993)); see also, Gregory v. Garrett Corp., 578 F. Supp. 871, 882-83 (S.D.N.Y. 1983) (noting New York's "overwhelming interest" in allowing contribution actions, but also recognizing New Jersey's express interest in barring third-party actions against employers). New Hampshire has squarely confronted this controversy and decided in Wentworth Hotel to allow implied indemnification actions against third-party defendant employers. Wentworth Hotel, 110 N.H. at 459-461. The New Hampshire Supreme Court has offered no indication to suggest that it would now consider this opinion to be "affirmatively unsound," Barrett v. Foster Grant Co., 450 F.2d 1146, 1154 (1st Cir. 1971), to represent an "unrepealed remnant of a bygone age," or "to lie

15

in the backwater of the modern stream." <u>LaBounty</u>, 122 N.H. at 743 (citations and quotations omitted). Thus, the fifth <u>Clark</u> factor also favors application of New Hampshire law in this action. For these reasons, I find that the facts of this case warrant the application of New Hampshire law to Davis's third-party action against NSG.

## V.    CONCLUSION

For the forgoing reasons, NSG's motion for judgment on the pleadings (document no. 16) is denied.

SO ORDERED.

_____
Paul Barbadoro
United States District Court

September 12, 1997

cc:  Leslie C. Nixon, Esq.
     Robert C. Dewhirst, Esq.
     Thomas J. Donovan, Esq.

16