Sullivan
No. 90-238

HAZEL GIBSON

v.

JOHNNIE LACLAIR

December 11, 1991

*Witkus & Weidman P.C.*, of Newport (*Vanessa M. Wilson* on the brief and orally), for the plaintiff.

*Buckley and Zopf*, of Claremont (*Bruce A. Cardello* on the brief and orally), for the defendant.

BATCHELDER, J.   This is an appeal from the Superior Court's (*Barry*, J.) decision granting a writ of possession in favor of the plaintiff after a one-day trial by the court. The underlying eviction action was initiated by the plaintiff under RSA chapter 540 in the Claremont District Court and removed to the superior court when the defendant entered a plea of title. For the reasons that follow, we reverse and remand this case to the superior court for further proceedings.

In the winter of 1978, Hazel Gibson, pursuant to a power of attorney given by her mother, Ruth R. Berg, approached the defendant to determine whether he would be interested in taking over certain

property in Unity. The defendant's understanding of the proposed arrangement was that "[I would] fix the place up and she told me I would have a lifetime lease, I would never have to worry about it."

At the time of this discussion, the property consisted of a small parcel of land on which was located a deteriorating two-hundred-year-old Cape Cod-type farmhouse and a barn, which had stood firm against perhaps one too many northern winters. The plaintiff and the defendant signed a lease in March of 1978, reducing to writing their intentions with respect to the property. It provided that the defendant was to have the premises "for the term of his natural life beginning on January 1, 1978," that he was obligated to "pay as rent all real estate taxes," and that he "shall promptly pay such taxes." The defendant was further required to insure the premises and to

> "put and maintain in thorough repair and in good and safe condition, all buildings and improvements on the leased property, and their equipment and appurtenances, both inside and outside, structural or non-structural, extraordinary and ordinary, however, the necessity or desirability for repairs may occur, whether or not necessitated by wear, tear, obsolescence, or defects, latent or otherwise."

The lease contained a provision to the effect that, if any default in rent payment or failure to perform any other agreement continued for sixty days, the lease would automatically terminate.

The oft-paraphrased observation of Robert Burns, that the best laid schemes of mice and men often go astray, is given witness by the events which subsequently transpired. By the time the notice to quit was issued in this case on August 25, 1988, Mrs. Berg had died, the barn had collapsed, and the two-hundred-year-old house had burned flat to the ground, having been replaced by a $16,000 mobile home. The defendant did not deliver up the premises in the week's time allotted in the notice to quit. On September 8, 1988, the Claremont District Court issued a landlord and tenant writ. The defendant responded with a motion to dismiss, claiming a life estate in the premises, resulting in a transfer to the superior court on the implicit claim of title. *See* RSA 540:17. The plaintiff later amended her pleadings to include a claim for breach of the obligation to pay insurance premiums.

After trial, the court ruled that the defendant had breached the terms of the lease because, beginning in 1980, he was frequently late in his payment of taxes and insurance premiums and had failed to satisfy his obligation to maintain the buildings on the premises:

namely, the barn. The court ruled that the plaintiff was entitled to possession of the premises and ordered that a writ of possession issue.

Following the denial of his motion for reconsideration, the defendant filed the present appeal. He argues that: (1) the plaintiff's notice to quit was defective, because it did not provide him with sufficient notice or inform him of his right to avoid eviction by the payment of arrearages, and that this deprived the superior court of subject matter jurisdiction to decide the issue of who is entitled to possession of the premises; (2) the plaintiff had no possessory interest entitling her to institute an eviction proceeding under RSA chapter 540; and (3) there was insufficient evidence to show that the defendant had terminated his life tenancy by breaching the terms of the lease.

■ The defendant's first argument is without merit in this proceeding because the claim of lack of jurisdiction based upon RSA 540:3, IV, relates to the issue of nonpayment of rent, and this claim was waived at argument. Secondly, the plaintiff was entitled to institute an eviction action under RSA chapter 540. The provisions of RSA chapter 540 may be invoked in a case in which a landlord and tenant relationship exists. *Stockbridge v. Nute*, 20 N.H. 271, 273 (1850) (citing R.S. chapter 209, a predecessor to RSA chapter 540). The plaintiff and the defendant clearly had such a relationship, which was governed by the terms of the lease which provided that, upon the defendant's failure to comply with its terms, his life tenancy would terminate, and the plaintiff could repossess the premises. Because the defendant allegedly breached the conditions of the lease, which breach entitled the plaintiff to repossess the premises, the plaintiff had a sufficient possessory interest to bring an action pursuant to RSA 540:12.

■ With regard to the question of whether there was sufficient evidence to show that the defendant breached the terms of the lease, we note that during oral argument, the plaintiff conceded that the only violation of the lease for which the defendant could have been found liable at the time the notice to quit was served was his alleged failure to maintain the barn. In light of this concession, the trial court's findings that the defendant failed to pay taxes and insurance on the premises in a timely manner cannot serve as grounds for ruling that the lease was terminated.

■ It has long been the law in this jurisdiction that a life tenant is required to use ordinary care in keeping buildings which are a part

of the estate from going to decay, but is not required to expend extraordinary sums. *See Wilson v. Edmonds*, 24 N.H. 517, 545 (1852); *see also Burke v. Millikin*, 69 N.H. 501, 502, 45 A. 401, 401 (1898). The lease agreement, however, contains language requiring the defendant to use "extraordinary" care in maintaining the leased property.

■ ■ As the seminal landlord-tenant case in this jurisdiction teaches, policy considerations are important in construing residential leases. *Kline v. Burns*, 111 N.H. 87, 276 A.2d 248 (1971). Even in the commercial context, however, a lease which binds the lessee "to make at his own expense all repairs of any kind, whether ordinary or extraordinary" does not require the lessee to repair a building that has become unusable for its purpose, and which has "inherent structural vices." *Fazzio v. Riverside Realty Company*, 232 La. 794, 807, 95 So. 2d 315, 320 (1957).

■ Moreover, in construing any lease, the age, *Codman v. Hygrade Food Products Corp.*, 295 Mass. 195, 198, 3 N.E.2d 759, 760 (1936), and condition, *Lyons v. Beasley*, 262 Mass. 332, 333, 159 N.E. 918, 918 (1928) (lessee held not liable when building in "dilapidated and ruinous condition" collapsed due to heavy snow), of the leased premises must be taken into account.

■ A review of the court's order and the rulings on the plaintiff's requests for findings of fact and rulings of law reveals that the trial court addressed the issue of maintenance and repair only in conclusory terms. Whether the repairs which would have been required to prevent the barn's collapse were within the contemplation of the parties when the lease was executed is not ascertainable from the record before us and is a necessary ingredient to determining whether the lease was breached. Because a lease is a contract whose terms must be interpreted according to contract law, *Turcotte v. Griffin*, 120 N.H. 292, 294, 415 A.2d 668, 669 (1980), the resolution of any question regarding the meaning of the lease is a question which is for the trial court to decide in the first instance, and is essential before this court can determine on appeal whether the evidence introduced at trial was sufficient to show that the defendant breached the lease. On remand, the trier of fact must determine the narrow issue of the nature and extent of the defendant's obligation to maintain and repair the leased property, as contemplated by the parties in their lease agreement, and whether, if performed, such maintenance

and repairs would have been sufficient to save the barn from collapse. Accordingly, we reverse the trial court's ruling that the defendant breached the lease on the record before us and remand this case to the superior court for further proceedings consistent with this opinion.

*Reversed and remanded.*

All concurred.