Strafford
No. 90-613

GEORGE BLAISDELL

v.

CITY OF ROCHESTER

May 28, 1992

*James B. Bartlett*, of York, Maine, by brief and orally, for the plaintiff.

*Michael, Jones & Wensley*, of Rochester (*Danford J. Wensley* on the brief and orally), for the defendant.

BROCK, C.J.   The plaintiff, George Blaisdell, relying upon Supreme Court Rule 38, Canon 3 (Code of Judicial Conduct), requested that a superior court justice recuse himself and vacate orders made in three related cases involving the plaintiff and the defendant, City of Rochester (city). The Superior Court Justice (*Nadeau*, J.) granted the plaintiff's motion to recuse himself from future participation, but denied the request to vacate any orders previously issued by him or any other judge in the two related cases. For the reasons that follow, we vacate all orders and remand for new proceedings.

On April 4, 1985, the city acquired legal title to property owned by the plaintiff through a tax sale. The plaintiff alleges that later that

year he and the city agreed that he would pay any outstanding taxes and interest due and the city would deed the property back to him. The plaintiff alleges he paid the city, but never received the deed to his property. Upon the city's denial that such an agreement was made, the plaintiff brought suit, No. 85-C-434 (Strafford Super. Ct.).

In an effort to regain title to his property, the plaintiff filed a "Motion to Enforce Settlement Agreement," which was scheduled for hearing before Justice Nadeau. The plaintiff failed to appear at the hearing, and, after the city made an offer of proof, the motion was denied. The trial court subsequently denied the plaintiff's motion to set aside, and ordered the case to be tried on the merits.

Two related cases ensued: *City of Rochester v. Blaisdell*, No. 86-C-094 (Strafford Super. Ct.), and *Blaisdell v. City of Rochester*, No. 89-E-189 (Strafford Super. Ct.). In No. 86-C-094, the Superior Court (*Temple*, J.) granted the city's motion for summary judgment requesting a writ of possession. The superior court relied exclusively on Justice Nadeau's resolution of the settlement agreement dispute. Then relying on Justice Temple's decision, Justice Nadeau dismissed count VI of the plaintiff's complaint in No. 85-C-434, which alleged that an improper tax sale of Mr. Blaisdell's residence had been conducted.

In No. 89-E-189, an equitable action, the plaintiff sought to enjoin the city from taking possession of his property by challenging the validity of the tax sale conducted by the city. Justice O'Neill, relying on Justice Nadeau's dismissal of this issue from the original case, ruled that the plaintiff's claims were barred by the doctrine of *res judicata*.

Approximately one year later, in October 1990, the plaintiff learned that Justice Nadeau is the nephew of Attorney Joseph E. Michael, Jr., the senior partner of Michael, Jones and Wensley, the law firm that has represented the city since 1986. Attorney Michael did not work on the city's dispute with the plaintiff, but neither he nor the attorney who did represent the city informed the plaintiff of the relationship. Likewise, Justice Nadeau never disclosed his ties to the defendant's firm.

Upon learning of the familial relationship between the judge and Attorney Michael, the plaintiff filed a motion to recuse and vacate all previous orders in the three cases. Justice Nadeau heard the motion and explained that he had had no contact with his uncle for over twenty years, and that he "perhaps ha[d] taken for granted that everybody knew [of] the relationship and everybody knew [of] the non-relationship." Noting that the plaintiff raised the issue as soon as he discovered the relationship and that the plaintiff was "uncomfortable," Justice Nadeau recused himself from future proceedings. He refused, however, to vacate either his, or any other judge's orders,

stating that there was no bias or prejudice toward the plaintiff in his rulings.

The plaintiff contends that Justice Nadeau should have disqualified himself at the outset, or, at least disclosed his familial relationship to Attorney Michael. In addition, the plaintiff argues that because Justice Nadeau's orders affected rulings in the two related cases, all orders in all three cases should be vacated. The defendant, on the other hand, asserts that there is no applicable *per se* rule of disqualification, and, even if the judge should have recused himself, his orders, viewed objectively, were unbiased and should not be vacated. Furthermore, the defendant contends that even if Justice Nadeau's orders are vacated, the orders of Justices O'Neill and Temple ought not to be vacated as Justice Nadeau made no rulings in those cases.

At issue, first and foremost, is Justice Nadeau's failure to disqualify himself from the proceedings, or, at a minimum, disclose his relationship to a senior partner of Michael, Jones and Wensley. According to the Code of Judicial Conduct, SUP. CT. R. 38, Canon 3C:

> "(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
>
> . . .
>
> (d) he . . . or a person within the third degree of relationship . . . :
>
> . . .
>
> (iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding . . . ."

■ The defendant argues that Attorney Michael would not be "substantially affected by the outcome of the proceeding" since there was no actual "relationship" between Attorney Michael and Justice Nadeau, and, therefore, there was no need for the judge to disqualify himself. Whether there was an ongoing personal relationship between the judge and his uncle is irrelevant; both Attorney Michael and his law firm could have been "substantially affected by the outcome of the proceeding." Aside from the inherent "financial interests at stake, a win or loss in any lawsuit could affect a partner's interest in his firm's reputation, its relationship with its clients, and its ability to attract new clients." *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1113 (5th Cir.), *cert. denied,* 449 U.S. 820 (1980). Therefore, we hold, as a matter of law, that when a judge is related within the third degree to a partner in a law firm representing a party-in-interest before that judge, that partner will always be

"known by the judge to have an interest that could be substantially affected by the outcome."

■■ At this juncture, we caution that it is the judge's responsibility to disclose, *sua sponte,* all information of any potential conflict between himself and the parties or their attorneys when his impartiality might reasonably be questioned. SUP. CT. R. 38, Canons 3C, D (CODE OF JUDICIAL CONDUCT); *see also Scott v. United States,* 559 A.2d 745, 749 (D.C. 1989); *Adams v. State,* 269 Ark. 548, 552, 601 S.W.2d 881, 885 (1980). Neither the client nor his attorney have any obligation to investigate the judge's impartiality. *See Reilly by Reilly v. Southeastern Pa. Transp.,* 479 A.2d 973, 986–88 (Pa. Super. 1984).

The Code of Judicial Conduct requires a judge to avoid even the appearance of impropriety and to "conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." SUP. CT. R. 38, Canon 2 (CODE OF JUDICIAL CONDUCT); *see also Potashnick,* 609 F.2d at 1111. Furthermore, Canon 3C(1) states that "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . . ."

■ Whether an appearance of impropriety exists is determined under an objective standard, *i.e.,* would a reasonable person, not the judge himself, question the impartiality of the court. *E.g., Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 860–61 (1987); *Home Placement Service v. Providence Journal Co.,* 739 F.2d 671, 674 (1st Cir. 1984), *cert. denied,* 469 U.S. 1191 (1985). "The objective standard is required in the interests of ensuring justice in the individual case and maintaining public confidence in the integrity of the judicial process which depends on a belief in the impersonality of judicial decision making." *Scott,* 559 A.2d at 749 (quotation omitted); *see also Liljeberg,* 486 U.S. at 864 ("We must continuously bear in mind that to perform its high function in the best way justice must satisfy the appearance of justice." (quotation omitted)).

In this instance, Justice Nadeau unequivocally stated for the record that there is indeed a relationship within the third degree, but that he had "had no personal, family, social, business, or other relationship with Attorney Michael" for the past twenty-three years. Although the judge may have believed that "everybody knew [of] the relationship and everybody knew [of] the nonrelationship," we cannot make such a presumption. While we have no reason to doubt Justice Nadeau's statement that he has had no relationship with his uncle for the past twenty-three years, "an objective observer might wonder whether [the trial judge] might not at some unconscious level favor the firm," Michael, Jones and Wensley. *Pepsico, Inc. v. McMillen,* 764 F.2d 458, 461 (7th Cir. 1985).

■■ The appearance of partiality permeates the proceeding. New Hampshire's canons of judicial conduct require, at a minimum, that such an appearance be avoided by giving the parties and their lawyers an opportunity, upon receiving notice of the relationship, to agree in writing that the judge may hear their dispute. SUP. CT. R. 38, Canon 3D (CODE OF JUDICIAL CONDUCT). Absent such a written agreement between the parties, which cannot be obtained without disclosure of the conflict, the judge may not sit on the case. Accordingly, we hold that a judge's failure to disclose to the parties the basis for his or her disqualification under Canon 3C will result in a disqualification of the judge.

The defendant next contends that the trial court's rulings, when viewed objectively, were neither biased nor prejudicial, and, therefore, the orders should stand as issued. As authority for this proposition, the defendant cites *Liljeberg*, 486 U.S. 847. In *Liljeberg*, the United States Supreme Court applied a harmless error test with respect to a judge who inadvertently overlooked a potential disqualifying circumstance under 28 U.S.C. § 455(a) (1976) (the equivalent of New Hampshire's Rule 38, Canon 3C).

■ We are not bound by *Liljeberg* in construing our own Code of Judicial Conduct. In our opinion, it would be inconsistent with the goals of our code to require certain standards of behavior from the judiciary in the interest of avoiding the appearance of partiality, but then to allow a judge's ruling to stand when those standards have been violated. Therefore, we decline to implement a harmless error test when evaluating violations of the code by the members of the New Hampshire bench.

■ Lastly, according to the defendant, because Justice Nadeau made no rulings in the latter two cases, the orders of Justices O'Neill and Temple must be upheld. We disagree. Justice Nadeau's rulings were an integral part of the two later related cases. Justice Temple relied on Justice Nadeau's resolution of the settlement agreement dispute when he granted the city's motion for summary judgment, and Justice O'Neill ruled that the plaintiff's claim was barred by *res judicata* due to the previous ruling by Justice Nadeau.

Therefore, due to the pervasive appearance of partiality in the original case, combined with the impact Justice Nadeau's rulings had on the two subsequent cases, we vacate all existing orders in Strafford County Superior Court cases No. 85-C-434, No. 86-C-094, and No. 89-E-189, and remand for further proceedings.

*Vacated and remanded.*

All concurred.