Merrimack
Nos. 96-500
96-816

KATHLEEN TAYLOR-BOREN

v.

ANDREW L. ISAAC, ESQ.

KATHLEEN TAYLOR-BOREN

v.

ANDREW L. ISAAC, ESQ. & a.

December 30, 1998

Elizabeth Cazden, of Manchester, and *Richard Y. Uchida*, of Concord (*Ms. Cazden* and *Mr. Uchida* on the brief; and *Ms. Cazden* orally), for the plaintiff.

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* on the brief and orally), for defendant Andrew L. Isaac.

*Wiggin & Nourie, P.A.*, of Manchester (*William S. Orcutt* and *Thomas W. Aylesworth* on the brief, and *Mr. Aylesworth* orally), for defendant Wiggin & Nourie, P.A.

JOHNSON, J. In this consolidated appeal, the plaintiff, Kathleen Taylor-Boren, appeals two decisions of the Superior Court (*McGuire*, J.) dismissing her suit requesting a jury trial in a breach of contract and legal malpractice action, and awarding the defendants attorney's fees of $100,000 plus expenses, plus sanctions of attorney's fees and interest in their collection action. We affirm in part, reverse in part, vacate in part, and remand.

While employed as an attorney by defendant Wiggin & Nourie (law firm), defendant Andrew L. Isaac represented the plaintiff in an action against the City of Concord. The plaintiff had entered into a fee agreement with the law firm providing for a contingent fee of forty percent of the recovery, plus expenses. On January 4, 1996, four days before the scheduled trial, Isaac's affiliation with the law firm ended. Isaac agreed to continue to represent the plaintiff, with the law firm providing litigation support services. The law firm agreed to give Isaac all attorney's fees in the case, agreeing to be reimbursed only for its expenses. On January 11, 1996, the plaintiff's guardian sent a letter to an attorney at the law firm setting forth the terms of Isaac's and the law firm's continued representation. The case proceeded to trial in the superior court on January 16, 1996. On January 19, in the midst of the plaintiff's testimony, Isaac settled the case for $511,000, and agreed to reduce his fee to $100,000. The plaintiff admits authorizing settlement for any amount in excess of $500,000, but alleges that any settlement was conditioned upon her completing her testimony about specific events giving rise to the litigation. The plaintiff contends that the settlement was unauthorized because she did not complete her testimony.

In February 1996, Isaac filed a notice of lien claiming attorney's fees of $100,000 for legal services in the underlying action. In March 1996, the plaintiff sought an expedited hearing to dissolve the liens. The trial court escrowed $250,000 from the plaintiff's settlement to secure the claims asserted by Isaac and the law firm. The court then "dissolved [the liens] in recognition of the escrow account."

In March 1996, the plaintiff filed a separate writ (independent suit) against Isaac and requested a jury trial on her breach of contract and legal malpractice claims. In April 1996, Isaac moved for a hearing in the original action to determine and enforce his claim. Noting that the plaintiff intended to contest the fee, Isaac increased his claim for attorney's fees to $204,400. The plaintiff agreed with Isaac's motion for a hearing, provided that the hearing was combined with the jury trial she sought. In May 1996, Isaac moved to dismiss the plaintiff's independent suit because the proceeding to determine and enforce the defendants' claims for attorney's fees and expenses in the original action was already pending.

On June 11, 1996, the court dismissed the plaintiff's independent suit "for the reasons stated in Defendant's motion to dismiss." The trial court later clarified its order, stating that "claims raised by the plaintiff in her dismissed writ of summons may be considered in the lien claim proceeding by the court."

After the independent suit was dismissed, the plaintiff again moved for a jury trial on the attorney's fees dispute in the original action. The trial court denied the request, maintaining that RSA 311:13 (1995) (amended 1996) does not provide such a right. The plaintiff also moved to recuse Judge McGuire. The trial court denied the motion.

After a bench trial, the trial court awarded Isaac $100,000 in attorney's fees. The trial court found the plaintiff's claims "not only insupportable, but indefensible." The court found that the plaintiff did not condition the settlement upon completion of her testimony. The court found that Isaac had agreed to a fee of $100,000, and awarded that amount. The court also found that the plaintiff had acted in bad faith and abused the judicial process in refusing to pay the attorney's fees and litigation expenses. The court awarded Isaac and the law firm reasonable attorney's fees and expenses for their collection efforts, plus "interest at the rate of 10% per annum from March 1, 1996[,] the approximate date that the settlement money became available to the plaintiff" in the original action.

The plaintiff appeals, claiming the trial court erred by: (1) holding that RSA 311:13 empowers the court to adjudicate issues relating to the attorney's fee, including malpractice and contract disputes; (2) denying her the right to a jury trial on her contract, fee dispute, and tort claims against her former attorneys; (3) compelling her to litigate her claims as counterclaims to Isaac's effort to collect his fee in the original action, rather than in an independent suit; (4) sanctioning her with attorney's fees, plus ten percent interest for

"indefensible" claims and bad faith in defending the attorney's fees action; and (5) denying her motion requesting that the judge recuse herself after Isaac allegedly represented to the plaintiff that he had a close friendship with the judge.

On appeal,

> [w]e review the trial court's factual findings as a mixed question of fact and law under the clearly erroneous standard. Findings of fact are clearly erroneous if unsupported by the evidence. Legal determinations and the application of law to fact are reviewed independently for plain error. Our inquiry is to determine whether the evidence presented to the trial court reasonably supports the court's findings, and then whether the court's decision is consonant with applicable law.

*Fleet Bank-N.H. v. Chain Constr. Corp.*, 138 N.H. 136, 139, 635 A.2d 1348, 1350 (1993) (citations omitted).

## I. Jury Trial

The plaintiff first argues that she is entitled to a jury determination of the attorney's fees owed to Isaac. The attorney's fee lien statute provides, in pertinent part:

> From the commencement of an action, bill in equity or other proceeding in any court . . . the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, upon the judgment decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom; and the lien cannot be affected by any settlement between the parties before or after the judgment decree or other order. Upon the request of the client or the attorney, the court in which the proceeding is pending, or, if the proceeding is not pending in a court, the superior court, may determine and enforce the lien . . . .

RSA 311:13. Isaac argues that RSA 311:13 grants the trial court complete authority to "determine and enforce the lien" without a jury. He further argues that there is no right to a jury trial in a RSA 311:13 lien proceeding, *cf. McElroy v. Gaffney*, 129 N.H. 382, 386, 529 A.2d 889, 891 (1987), because this lien was not declaratory of the common law as it existed prior to the adoption of the statute, *see Peterson v. Reilly Company*, 110 N.H. 1, 5, 259 A.2d 393, 396 (1969).

Under RSA 311:13, the trial court may "determine and enforce" an attorney's fee lien in an equitable proceeding without a jury. This lien protects the attorney from a client who might dissipate the proceeds before the attorney's fees are paid. *See* 2 E. THORNTON, A TREATISE ON ATTORNEYS AT LAW §§ 661-62, at 1066-67 (1914). The court may determine whether an attorney has a valid claim to proceeds from a settlement or judgment for fees and expenses, and enforce the attorney's lien by prohibiting the client from dissipating those proceeds. *See* RESTATEMENT OF THE LAW GOVERNING LAWYERS § 55, at 231-35 (Proposed Final Draft No. 1, 1996). Although we previously noted that RSA 311:13 is not declaratory of the common law, *see Peterson*, 110 N.H. at 5, 259 A.2d at 396, our conclusion related to the priority afforded to an attorney's lien, not to the right to a jury trial. RSA 311:13 deviates from the common law by providing priority to an attorney's fees for efforts in securing a judgment or settlement for the client. Once the lien has been perfected and the necessary funds secured, however, RSA 311:13 has no further applicability, and any fee dispute should be resolved in the same manner as any other contract or tort dispute. Accordingly, any legal disputes regarding the amounts due are resolved by other applicable statutes and common law.

In this instance, the plaintiff alleges the settlement of her suit was inconsistent with the oral agreement she made with Isaac, and constituted tortious conduct. The plaintiff argues that the fee dispute is essentially a plea in assumpsit, an action for which the common law recognized a right to a jury trial if properly demanded. She argues that Part I, Article 20 of the New Hampshire Constitution protects her right to a jury trial in the attorney's fee proceeding.

"Questions as to what agreement was made between [the parties] . . . are for the trier of fact." *Belleau v. Hopewell*, 120 N.H. 46, 50, 411 A.2d 456, 459 (1980); *see* 2 THORNTON, *supra* § 565, at 960-61. At common law, an attorney seeking to recover legal fees would bring an action in assumpsit. *See, e.g., Thistle v. Halstead*, 96 N.H. 192, 194, 72 A.2d 455, 456 (1950). Provided a timely request is made, *see Sperl v. Sperl*, 119 N.H. 818, 819-20, 408 A.2d 422, 423 (1979), actions in assumpsit may be tried to a jury, *Murphy & Sons, Inc. v. Peters*, 95 N.H. 275, 276, 62 A.2d 718, 720 (1948); *see Coos Lumber Co. v. Builders Lumber & Supply Co.*, 104 N.H. 404, 406, 188 A.2d 330, 331 (1963) (allowing jury to decide damages in breach of contract action), including actions for attorney's fees, *see Cameron v. Sullivan*, 360 N.E.2d 890, 892-93 (Mass. 1977). Likewise, tort

actions for legal malpractice may also be tried before a jury. *See Witte v. Desmarais*, 136 N.H. 178, 189-90, 614 A.2d 116, 121 (1992).

In pleadings filed in April 1996 in the original action, the plaintiff noted that she had "no objection to a hearing in this matter which . . . will also constitute a hearing on the merits of the lawsuit, so long as [she] is not deprived of her right to a jury trial." Before trial, the plaintiff again moved for a jury trial, which was denied. Accordingly, we conclude that the plaintiff made a timely request, which should have been granted.

## II. Dismissal of Independent Suit

Having concluded that the plaintiff was entitled to a jury trial, we need not address her arguments regarding the dismissal of her independent suit. In her pleadings in the original action, she notes that she "has no objection to the establishment of a hearing within an appropriate period of time to determine the enforceability of the lien claim [which] . . . should be combined with a hearing on the merits of [her] lawsuit, since the claims are one in the same." Her sole objection to consolidation was that she not be "deprived of her right to a jury trial." Clarifying its dismissal order, the trial court noted that "the claims raised by the plaintiff in her dismissed writ of summons may be considered in the lien claim proceeding by the court." Although we would have consolidated the plaintiff's independent suit with the original action, we conclude that the trial court's order has the same practical effect. Accepting the plaintiff's contention that "the claims [in the two suits] are one in the same," we conclude that any issues regarding the dismissal of her independent suit are moot in light of our holding that she is entitled to a jury trial.

## III. Costs

Next, we consider whether the expenses awarded to the defendant law firm are proper. On appeal, the plaintiff does not claim a right to a jury trial to determine the law firm's costs and concedes that $37,659.27 is proper, while challenging the remainder of costs as improper. Accordingly, we review the trial court's award of costs for abuse of discretion. *See Business Publications v. Stephen*, 140 N.H. 145, 147, 666 A.2d 932, 933 (1995).

Under the written fee agreement, the law firm has the burden of proving both the amount of particular expenses, and that "expenses incurred . . . are directly related to the performance of legal services undertaken." Our review of the court's order and the

rulings on the plaintiff's requests for findings of fact and rulings of law reveals that the trial court addressed the plaintiff's concerns over the contested expenses only in conclusory terms. *Cf. Gibson v. LaClair*, 135 N.H. 129, 133-34, 600 A.2d 455, 458 (1991). Without further explanation, the trial court found only that "all of the expenses claimed by Wiggin & Nourie are reasonable and directly related to the performance of legal services in her case against the City of Concord" and awarded the law firm $45,809.65. The trial court refused to rule on the plaintiff's 119 requests for findings of fact and rulings of law because, *inter alia*, "the [c]ourt's narrative findings set forth the facts essential to its order." We note that the law firm could not identify the nature of the work conducted for some of the claimed expenses, or document the purpose of others. Accordingly, we affirm the trial court's decision with respect to the conceded amount, but vacate and remand to the trial court for further proceedings to clarify the propriety of the expenses contested in paragraph 116 of the plaintiff's request for findings of fact and rulings of law. *Cf. id.*

## IV. Sanctions

Because we conclude that the plaintiff is entitled to a jury trial in her fee dispute and remand for further proceedings in her cost dispute, we vacate the trial court's order sanctioning the plaintiff by awarding attorney's fees and interest. *Cf. Emerson v. Town of Stratford*, 139 N.H. 629, 632, 660 A.2d 1118, 1120-21 (1995).

## V. Recusal

Next, the plaintiff challenges Judge McGuire's refusal to recuse herself in light of representations allegedly made by Isaac. At trial, the plaintiff claimed that Isaac and Judge McGuire "have developed a close personal relationship and friendship, if his statements are to be believed . . . [and] that this relationship may affect the way in which the trial judge reviews his requests." The plaintiff alleged that when she disputed Isaac's claim to a fee of $100,000, Isaac told her that "we'll just see what Kathy [Judge McGuire] thinks about that." The plaintiff also alleged that Isaac stated that he used to "go to lunch often with Kathy" while they were both employed at the attorney general's office, that he frequently had dinner at her home in Loudon, and that she had a "cute little girl." The plaintiff also alleged that Isaac told her that he had taken Judge McGuire "under (his) wing to help her along at the Attorney General's office." The plaintiff argued that the relationship may affect Judge McGuire's judgment on issues involving Isaac's personal interests. The plain-

tiff conceded, however, that she was "unable to confirm the truth of any of these statements."

Isaac acknowledged that in conversation he "may have referred to Judge McGuire by her first name," which is a practice "share[d] with other experienced counsel." Isaac said he did not recall having lunch with Judge McGuire, and "certainly never spoke of it" to the plaintiff. He recalled having been invited to Judge McGuire's home with his wife once, approximately ten years earlier while they were both prosecutors. He also stated that since that evening, he and his wife "had absolutely no social connection with Judge McGuire . . . no Christmas cards, no phone calls, no lunches, dinners, softball games, cookouts — nothing at all," and that his contact with the judge had been limited to appearances in court before her. Isaac also argued that he could not have taken Judge McGuire "under his wing" because he worked very little with her at the attorney general's office, and was never the attorney in charge of that office's criminal division.

Judge McGuire denied the motion to recuse and at trial clarified her reasoning for denying the motion. She noted that

> based on the affidavits of both the plaintiff and Mr. Isaac, I found that the plaintiff — the affidavit of the plaintiff simply wasn't credible. I don't think — Attorney Isaac couldn't have said what the plaintiff claims that he said because the information in her affidavit is simply not true. . . . [F]or example, I don't live in Loudon and I don't have a daughter. Rather, I think the relationship between myself and Mr. Isaac is accurately stated in Mr. Isaac's affidavit and there's no reason for the Court to recuse itself. I can sit on this case as a fair and impartial judge.

"Whether an appearance of impropriety exists is determined under an objective standard, *i.e.*, would a reasonable person, not the judge [her]self, question the impartiality of the court." *Snow's Case*, 140 N.H. 618, 624, 674 A.2d 573, 577 (1996); *see Blaisdell v. City of Rochester*, 135 N.H. 589, 593, 609 A.2d 388, 390 (1992). "The test for the appearance of partiality is an objective one, that is, whether an objective, disinterested observer, fully informed of the facts, would entertain significant doubt that justice would be done in the case." J. SHAMAN ET AL., JUDICIAL CONDUCT AND ETHICS § 4.15, at 125-26 (2d ed. 1995); *see United States v. Murphy*, 768 F.2d 1518, 1538 (7th Cir. 1985), *cert. denied*, 475 U.S. 1012 (1986). "Whether or not disqualification is required when a friend appears as a party to

a suit before a judge depends on how personal the relationship is between the judge and the party." SHAMAN, *supra* § 4.15, at 124.

█ It is inevitable that judges will have had contact with attorneys before appointment to the bench, and will continue to have some contact after they are appointed. Judges are members of society and are not expected to live isolated and sheltered lives. *See* SHAMAN, *supra* § 4.01, at 96. Some relationships are *per se* bases for recusal. *See, e.g., Blaisdell*, 135 N.H. at 592-93, 609 A.2d at 390. Other relationships and contacts with parties and attorneys become disqualifying when those connections affect a reasonable observer's perception of fairness. *See generally* 46 AM. JUR. 2D *Judges* §§ 95-193 (1994); Annotation, *Judicial Disqualification*, 85 A.L.R. 4TH 700 (1991). Judge McGuire based her decision, in part, on her finding that "the relationship between myself and Mr. Isaac is accurately stated in Mr. Isaac's affidavit." Accordingly, we affirm the trial court's decision denying the motion to recuse.

*VI. Conclusion*

We affirm the trial court's dismissal of the independent suit and denial of the motion to recuse. We reverse the trial court's denial of the plaintiff's request for a jury trial. We affirm in part and vacate in part the trial court's award of costs to the law firm, and remand for further proceedings. We also vacate the court's judgment awarding the defendants attorney's fees and expenses in the original action, the judgment for the defendants on the plaintiff's breach of contract and legal malpractice claims, plus the sanction of attorney's fees and interest, and remand for a jury trial on the underlying fee dispute and related matters.

> *Affirmed in part; reversed in part;*
> *vacated in part; remanded.*

All concurred.