HICKS, J.
Farmington School District (district) appeals a decision of the State Board of Education (state board) reversing the decision of the Farmington School Board (local board) not to renew the employment contract of Demetria McKaig, a guidance counselor at Farmington High School. McKaig cross-appeals the state board’s decision and argues that she is entitled to reinstatement with back pay and benefits. We affirm in part, reverse in part, order that McKaig be reinstated to her former employment, and remand to the board for further proceedings to determine whether she is entitled to additional remedies.
The state board’s decision includes the following facts. McKaig was a high school guidance counselor employed by the district. In November 2012, a student — whom, consistent with the record, we will refer to as “Student A” — and her boyfriend told McKaig and another guidance counselor that Student A was pregnant and that she wanted to terminate her pregnancy. Student A was fifteen years old at the time.
McKaig suggested that Student A tell her mother about the pregnancy, but Student A refused. Student A and her boyfriend told McKaig that they did not want Student A’s mother to know about the pregnancy because they were afraid for their safety. McKaig researched Student A’s options and found New Hampshire’s parental notification and judicial bypass laws for minors seeking an abortion. See RSA 132:33, :34, II (2015).
After meeting with Student A, McKaig and the other guidance counselor met with the principal and other school staff to discuss the issue of Student A’s pregnancy. The principal expressed his view that the school should inform Student A’s mother about the pregnancy. McKaig disagreed, asserting that Student A had a right to keep the pregnancy confidential. The meeting concluded without a decision about whether to contact Student A’s mother.
After the meeting, McKaig spoke with Attorney Barbara Keshen of the New Hampshire Civil Liberties Union about Student A’s situation. McKaig provided Keshen with Student A’s initials, age, and grade. McKaig and Keshen also discussed Student A’s potential privacy rights. Keshen’s opinion was that the judicial bypass law protected the confidentiality of Student A’s pregnancy and the fact that she was contemplating an abortion. *729 McKaig relayed this opinion to Student A, and Student A made an appointment with a health center and another attorney to assist her with the judicial bypass proceedings.
On December 3, 2012, the principal instructed the school nurse to meet with Student A to tell her that the school would inform her mother about her pregnancy by December 5. That same day, McKaig told the principal about her conversation with Keshen and urged him to contact Keshen to discuss Student A’s rights. The principal did not contact Keshen; however, on December 4, Keshen contacted him. He told Keshen that he had reviewed the parental notification and judicial bypass laws and determined that they did not prevent him from telling Student A’s mother about the pregnancy.
Keshen instituted a petition for a temporary restraining order (TRO) against the principal in superior court to prevent the principal from contacting Student A’s mother. McKaig was named as the petitioner “ON BEHALF OF [Student A]”; she was not named in her individual capacity. The petition did not include Student A’s name. It instead referred to Student A by her initials and mentioned her age and grade, and that she was pregnant.
The district’s attorney filed a special appearance on the principal’s behalf, notifying the superior court that the principal would not inform Student A’s mother about the pregnancy until the court held a hearing on the TRO petition. On December 10, Student A obtained a “judicial bypass order” from the superior court. The next day, the superior court granted the TRO petition.
Some four months later, on April 9, 2013, McKaig received a notice of nonrenewal from the superintendent; the notice did not advise her of the reasons for nonrenewal. McKaig subsequently requested a written statement of the reasons and a hearing before the local board under RSA 189:14-a (Supp. 2015). On May 24, 2013, the superintendent sent McKaig a statement of three reasons for her nonrenewal: insubordination, breach of student confidentiality, and neglect of duties. The record contains no indication that, prior to McKaig receiving the statement of reasons for nonrenewal, she was advised by any administration official that in connection with this matter she had been insubordinate, had breached student confidentiality, or had neglected her duties. After the hearing, the local board upheld McKaig’s nonrenewal on the grounds of insubordination and breach of confidentiality, but not neglect of duties.
McKaig appealed to the state board, which found, pursuant to RSA 189:14-b, II (2008), that the local board’s decision was “clearly erroneous.” The state board reversed the local board’s decision to uphold McKaig’s nonrenewal, but it did not order McKaig’s reinstatement or any other *730 remedy. McKaig moved for reconsideration in light of the board’s failure to specify a remedy; the state board denied her motion. The district appealed the state board’s decision to this court. McKaig cross-appealed, arguing that we should affirm the state board’s decision except for its failure to provide a remedy. McKaig contends that she was entitled to reinstatement with back pay and benefits.
RSA chapter 541 governs our review of the state board’s decision. See RSA 21-N:11, III (2012). Under RSA 541:13 (2007), we will not set aside the state board’s order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable. See Appeal of Hillsborough County Nursing Home, 166 N.H. 731, 733 (2014). In reviewing the state board’s order, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the state board’s findings are supported by competent evidence in the record. Id. We review the state board’s rulings on issues of law de novo. Id. “The party seeking to set aside the [state] board’s order bears the burden of demonstrating that it is clearly unreasonable or unlawful.” Appeal of Hopkinton Sch. Dist., 151 N.H. 478, 480 (2004).
The district first argues that the state board committed an error of law by “failing to correctly apply the clearly erroneous standard of review required under RSA 189:14-b, II.” (Quotation omitted.) According to the district, the state board instead impermissibly engaged in de novo review, “unlawfully reaching] its own factual conclusions based upon the evidence presented at the local school board level rather than determin[ing] whether the [local board’s] decision was supported by the evidence.” We disagree.
RSA 189:14-b, II provides that “[t]he state board of education shall uphold a decision of a local school board to nonrenew a teacher’s contract unless the local school board’s decision is clearly erroneous.” RSA 189:14-b, II. As the district correctly notes, we have “yet to consider the clearly erroneous standard ... in RSA 189:14-b, II.” However, as to decisions by trial courts, we review a trial court’s “factual findings as a mixed question of fact and law under the clearly erroneous standard. Findings of fact are clearly erroneous if unsupported by the evidence .... Our inquiry is to determine whether the evidence presented to the trial court reasonably supports the court’s findings, and then whether the court’s decision is consonant with applicable law.” Taylor-Boren v. Isaac, 143 N.H. 261, 264 (1998) (quotation omitted). We note that nothing in RSA 189:14-b, II’s text indicates that the legislature intended not to assign “clearly erroneous” its usual and customary meaning. Thus, the state board applies the clearly erroneous standard as stated in Taylor-Boren v. Isaac when reviewing the decisions of local school boards.
*731 We hold that the state board did not err in its application of RSA 189:14-b, II’s clearly erroneous standard. The state board’s decision shows that it reviewed the record and found that the record did not reasonably support the local board’s conclusions that McKaig had been insubordinate or breached student confidentiality. Concerning insubordination, for example, the state board reviewed the district’s policies cited by the local board and determined that the plain language of those policies did not require, among other things, that McKaig report to the superintendent before acting to prevent the principal from disclosing Student A’s pregnancy. This conclusion was not a de novo factual determination. Rather, the state board accepted the local board’s account of what McKaig did to assist Student A, but found clearly erroneous the local board’s conclusion that McKaig’s actions were inconsistent with district policy.
The district insists that the state board “unlawfully reached its own factual conclusions . . . rather than determine whether the [local board’s] decision was supported by the evidence.” The district argues that “de novo review is plainly evident in the conclusion section of [the state board’s] decision, wherein it states that ‘[u]nder these particular circumstances, the record as a whole does not support a finding of insubordination or breach of confidentiality against McKaig.’ ” We fail to see how that statement in the state board’s conclusion, which essentially mirrors our explanation of the clearly erroneous standard in Taylor-Boren, amounts to de novo review.
The district also points to several of the state board’s allegedly impermissible factual conclusions, including that: “[t]here was nothing in the policy that required [McKaig] to appeal to the superintendent”; “the record reflected legitimate safety concerns”; “McKaig acted consistently with the policies and practices applicable to her role as guidance counselor”; and others. (Quotations omitted.) However, none of these conclusions evidence an impermissible de novo review. The first of the three is not a factual conclusion, but an interpretation of district policy, which interpretation is similar to a question of law. The clearly erroneous standard does not prohibit the state board’s de novo review of the local board’s interpretation of district policy. Cf. Taylor-Boren, 143 N.H. at 264 (including in the clearly erroneous standard an inquiry into not only “whether the evidence presented . .. reasonably supports the court’s findings,” but also “whether the court’s decision is consonant with applicable law”). As to the remaining conclusions, the state board pointed to significant evidence in the record or defects in the local board’s reasoning, which, according to it, supported its conclusions and rendered the local board’s contrary conclusions clearly erroneous. This is precisely the nature of the review that RSA 189:14-b, II requires the board to conduct.
*732 Next, the district argues that it was unjust and unreasonable for the state board to reverse the local board’s decision. See RSA 541:13. In doing so, the district challenges both of the state board’s conclusions: (1) that McKaig was not insubordinate; and (2) that McKaig did not impermissibly disclose Student A’s confidential information. Mindful of the significant deference that we owe the state board under RSA 541:13, we reject both of the district’s challenges.
We hold that it was neither unjust nor unreasonable for the state board to rule that the local board’s decision that McKaig was insubordinate was clearly erroneous. According to the local board, McKaig was insubordinate because she violated two school district policies: Policies 4244 and 4116. Policy 4244 states in part:
The best [course] of action for an employee to take to avoid an insubordination issue is to follow the directive given by the supervisor, then later question or challenge the directive through dispute resolution. If an employee disagrees with a policy, regulation, rule, procedure and/or directive, or thinks it is unfair or unnecessary, the employee should discuss the issue with the Building Administrator.
The local board concluded that McKaig violated this policy by “disregarding] the principal’s role as decision maker and go[ing] to court against him, rather than up the chain of command.” However, the state board explained that Policy 4244 did not require going “up the chain of command,” but only that McKaig speak “with the building administrator^ that is, the principal,] if there was a disagreement with his decision.” (Quotation omitted.) The state board concluded that McKaig complied with Policy 4244 by “keeping the principal informed as to her actions and research on behalf of Student A[,] and urging him to contact” Keshen. The district argues that Policy 4244’s reference to dispute resolution required McKaig to “attempt to resolve” her disagreement with the principal “above the level of [her] supervisor,” that is, with the superintendent, rather than to file “a lawsuit in [s]uperior [c]ourt.” Thus, the district argues, the local board’s conclusion that “McKaig was insubordinate in violation of Policy 4244” was not clearly erroneous, and the state board was “unjust and unreasonable in deciding that there ‘was nothing in the policy that required [McKaig] to appeal to the superintendent.’ ”
Contrary to the district’s contention, the plain language of Policy 4244 does not require district employees to appeal their disagreements “up the chain of command.” (Quotation omitted.) Although the policy mentions dispute resolution, it refers to it as the “best,” not the only, course of action that an employee may take to “challenge [a] directive.” Moreover, consis *733 tent with the state board’s conclusion, the policy recommends that employees discuss policy disagreements with the building administrator, that is, the principal. Thus Policy 4244’s text supports the state board’s conclusion that, to avoid insubordination, McKaig was required only to discuss her disagreement with the principal, which she did. Moreover, the state board observed that “McKaig acted consistently with policies and practices applicable to her role as guidance counselor.” Thus, the state board apparently recognized that McKaig had professional obligations apart from her responsibilities as an employee. Accordingly, we conclude that it was neither unjust nor unreasonable for the state board to rule that the local board’s application of Policy 4244 was clearly erroneous.
The state board also rejected as clearly erroneous the local board’s conclusion that McKaig violated Policies 4244 and 4116 by failing to “follow and abide by the decision of’ the principal to inform Student A’s mother about her pregnancy. Policy 4244 refers to dispute resolution as a means of “ehalleng[ing] [a] directive.” Policy 4116, in turn, provides in pertinent part that “[a]ll staff members will follow policies as outlined by the School District . . . and/or the directions of the Principal.” The local board concluded that the principal’s decision to inform Student A’s mother about her pregnancy was a “directive” even though “it was not a direct order” to McKaig not to act on Student A’s behalf. (Quotation omitted.) According to the local board, because McKaig disobeyed this directive by “cho[osing] to become a litigant against” the principal, McKaig violated Policies 4244 and 4116 and was therefore insubordinate. The state board determined that the record did not support the local board’s finding that there was a directive because the principal never told McKaig “to cease her efforts on behalf of Student A, even when it became apparent that both she and the other guidance counselor disagreed with the principal’s decision and that McKaig had already consulted with” Keshen. The district argues that the local board committed no clear error by finding that the principal’s decision was a directive, which McKaig disobeyed, and, thus, the state board’s conclusion that McKaig violated no directive was unjust and unreasonable.
The record supports the state board’s conclusion that the principal did not give McKaig a directive. After McKaig told the principal about Student A’s pregnancy, the principal did not tell McKaig to stop assisting Student A. The principal’s next action was to direct the school nurse to have a discussion with Student A about her pregnancy. Because the principal never instructed McKaig not to act on Student A’s behalf, it was neither unjust nor unreasonable for the state board to conclude that McKaig did not disobey a directive of the principal or that the local board’s ruling that McKaig violated Policies 4244 and 4116 was clearly erroneous.
*734 Next, the district argues that it was unjust and unreasonable for the state board to reject as clearly erroneous the local board’s finding that McKaig breached student confidentiality. According to the local board, McKaig violated another provision in Policy 4116 by providing Student A’s “confidential medical and identifying information” to Keshen and by allowing “that information’s subsequent disclosure” in the TRO petition. The state board found that McKaig’s disclosure was justified under an exception to the Federal Educational Rights and Privacy Act (FERPA), which, we note, is incorporated into Policy 4116 by reference. The state board explained that the exception “permits release of confidential information under certain ‘emergency’ situations.” See 20 U.S.C. § 1232g(b)(l)(I) (2012). The state board provided two additional reasons for its decision that the local board’s ruling on confidentiality was clearly erroneous. However, the state board’s reading of Policy 4116 alone supports its conclusion that neither McKaig’s disclosure nor Keshen’s inclusion of that disclosure in the TRO petition violated the confidentiality policy. Thus, we confine our discussion about confidentiality accordingly.
Policy 4116 provides in relevant part that “[a]ll employees are expected to keep personal information pertaining to pupils in confidence as required by the Buckley Amendment,” that is, FERPA. The local board found that McKaig violated Policy 4116 by disclosing to Keshen Student A’s initials, age, academic year, and pregnancy. The state board disagreed, and noted that FERPA permits the disclosure of confidential student information in emergency situations “if the knowledge of such information is necessary to protect the health or safety of the student or other persons.” Id. (quotation omitted). The state board noted Student A’s safety concerns, acknowledged that the local board failed to address those concerns or “whether . . . McKaig’s actions were at least in accordance with the FERPA exceptions,” and determined that “the record supported] a conclusion that they were.”
We note that, in reversing the local board’s decision, the state board was not interpreting or applying federal law. Rather, the state board’s decision shows that, to the extent that it considered FERPA’s provisions, it did so to determine the scope of Policy 4116’s confidentiality provision. For this reason, we reject the district’s argument that the state board erred in relying on FERPA’s health and safety exception because FERPA applies to “educational agenc[ies] or institution[s],” not district employees, such as McKaig. This argument incorrectly assumes that the board was considering only FERPA, rather than Policy 4116, when analyzing McKaig’s disclosure. Unlike FERPA, Policy 4116 applies to “[a]ll employees.” It instructs employees to “keep personal information pertaining to pupils in confidence” in accordance with FERPA. When drafting Policy 4116, the district could have crafted its own student confidentiality rules and *735 exceptions. Instead, it opted to incorporate by reference the rules and exceptions of FERPA, which include the health and safety exception that the board considered. Thus, FERPA’s application to “educational agencies] or institution[s]” is not controlling in our review of the board’s decision. We instead focus on the board’s interpretation of Policy 4116, which incorporates FERPA guidelines as the standard by which “[a]ll [district] employees” must manage confidential student information.
The record shows that in ruling that McKaig violated Policy 4116, the local board failed to consider FERPA or its exceptions. Because Policy 4116 incorporates FERPA, it was neither unjust nor unreasonable for the state board to conclude that the local board’s failure to address FERPA in its analysis of Policy 4116 was clearly erroneous.
Further, the record supports the state board’s determination that Student A and “her boyfriend were afraid for their safety if [Student A’s] mother found out” about her pregnancy. Both McKaig and the other guidance counselor testified repeatedly about Student A’s safety concerns. The local board did not address this testimony specifically, but stated more generally that it did not base its decision on “what the witnesses who dealt with [Student A] claim she said at various points in time.” The local board appeared to conclude that these statements were irrelevant to the confidentiality issue, explaining that “[t]he statements attributed to [Student A] did not relate in any substantial way to the . . . issues supporting the acceptance of the Superintendent’s recommendation,” including the failure “to preserve the confidentiality of student information.” However, consideration of those statements was necessary to determine whether the health and safety exception, as incorporated into Policy 4116, permitted McKaig’s disclosure. The statements showed that McKaig disclosed limited information about Student A for the purpose of preventing the principal from informing Student A’s mother about the pregnancy and thereby endangering Student A and her boyfriend. Thus, it was neither unjust nor unreasonable for the state board to find clearly erroneous the local board’s failure to consider that testimony as well as its ultimate conclusion that McKaig violated Policy 4116. ■
The dissent and the majority agree on one thing — this case is sui generis. Our analysis is confined to the particular policies of the Farmington School District and their application to a unique set of facts. In this narrow context, we conclude that, for the reasons stated above, the state board’s interpretations of the policies were neither unjust nor unreasonable. Although the dissent may interpret the policies differently, we decline to substitute our judgment for the state board’s reasonable interpretations based upon its administrative expertise. See Appeal of *736 Town of Seabrook, 163 N.H. 635, 646 (2012) (“[W]e are reluctant to substitute our judgment for the expertise of administrative officials”). Additionally, given the limited issues before us, we cannot accept the dissent’s predictions about our decision’s “frightening implications for the management of all collective organizations.” We also note that, contrary to what the dissent maintains, McKaig did not “sue her supervisor” because she “disagree[d] with his decision” about Student A. She brought the TRO petition on behalf of a minor, who was granted significant rights by the New Hampshire legislature. At no point during the superior court litigation did the district challenge McKaig’s standing to bring suit on behalf of Student A, whose rights were at issue. Moreover, we find it ironic, as well as concerning, that: the district asked the trial court to grant the requested TRO against it, which the trial court did and which the district did not appeal; and then, five months later, the district decided not to renew McKaig’s employment based, in part, upon her filing of the TRO petition.
Apart from the unique circumstances giving rise to this case, there is nothing remarkable about our analysis; rather, it is based upon a reasoned application of legislative enactments, and employs well-established principles of judicial review, according proper deference to the state board’s decision. We are disappointed by the tone of the dissent and its incorrect assumptions about our motivations. In contrast, we do not choose to speculate upon the motivations of the dissent; rather, after giving due consideration to the legal points raised by the dissent, we reject its substantive criticisms of our analysis.
Although the state board reversed the local board’s decision not to renew McKaig’s employment, it did not order a specific remedy. McKaig argues that she is entitled to reinstatement with back pay and benefits. The district does not deny that reinstatement would be a proper remedy in the event that we uphold the board’s decision. However, it contests McKaig’s entitlement to back pay and benefits.
RSA 189:14-b grants the state board the authority to review and reverse the decisions of local boards in nonrenewal matters. See RSA 189:14-b. However, the statute does not explicitly provide for a remedy in the event of a reversal. In two cases, we have discussed remedies for teachers who prevailed in nonrenewal matters. In Petition of Dunlap, 134 N.H. 533 (1991), we ordered the reinstatement of a teacher whose contract the school district had not renewed because of the teacher’s many absences due to chronic asthma. Dunlap, 134 N.H. at 534-35, 543. McKaig cites Dunlap to support her argument that RSA 189:14-b “includes the power to reinstate a teacher.” However, Dunlap did not so hold. Rather, in Dunlap, we held that the petitioner’s nonrenewal on account of his asthma violated *737 a statute that prohibited employment discrimination against the disabled. Id. at 539, 543. We ordered reinstatement on the basis of that statutory violation, but we did not explicitly connect the reinstatement remedy to RSA 189:14-b. Id.
In Littky v. Winchester School District, 129 N.H. 626 (1987), we awarded attorney’s fees to a teacher who prevailed in a nonrenewal matter. Littky, 129 N.H. at 631. In doing so, we relied upon the “test we set out in Harkeem v. Adams, 117 N.H. 687, 377 A.2d 617 (1977), [stating that] where an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention, an award of counsel fees on the basis of bad faith is appropriate.” Id. (quotation and brackets omitted). We note, however, that here McKaig requests back pay and benefits, not attorney’s fees.
We acknowledge, as did the district, that, without the ability to order reinstatement, the state board’s authority to reverse a local board’s decision not to renew a teacher or, in the instant case, a guidance counselor, would be meaningless. See RSA 189:14-b. We therefore affirm the state board’s reversal of the local board’s decision, and order that McKaig be reinstated to her former employment. We also remand to the state board the issue of whether McKaig is entitled to additional remedies, which issue should be addressed by the state board in the first instance.

Affirmed in part; reversed in part; and remanded

Dalianis, C.J., and CONBOY and Bassett, JJ., concurred; Lynn, J., dissented.